JOSEPH E. PUTNAM *vs.* HOME INSURANCE COMPANY.

Suffolk. March 14. — Oct. 19, 1877. LORD & SOULE, JJ., absent.

In an action upon an oral contract of insurance, there was evidence that the plaintiff made an application for insurance to the defendant's local agent; that the local agent agreed to place at once a certain amount at a certain rate upon the risk and to bind it, and immediately made a memorandum to that effect in what was called his "binding-book;" that the policy was not to issue until a special agent of the defendant had inspected and approved of the risk, which was specially hazardous; that the local agent had authority in writing "to receive proposals for insurance," and was entrusted with blank policies signed by the defendant's president and secretary, which he was accustomed to fill out and deliver without consultation with them; that he had frequently, with their knowledge and consent, issued policies upon risks of the same class without submitting the same for their previous approval; and that there was a usage among insurance companies and their agents to bind the companies by preliminary oral agreements until policies could conveniently be issued. *Held*, that a jury would be warranted in finding that the local agent made an oral agreement of insurance within the apparent scope of his authority.

CONTRACT. Writ dated August 18, 1875. The declaration alleged that on August 17, 1874, the plaintiff was the owner of a certain building situated in that part of Boston called South Boston, and numbered 636 on Second Street, and of the value of $10,000; that the defendant on said August 17, in consideration of a premium to be paid to it by the plaintiff, agreed to insure the plaintiff against loss or damage to the said building by fire, for twelve months from and including said August 17, in the sum of $1000; that the defendant neglected and refused to fulfil its said agreement, and that said property was totally destroyed by fire on September 5, 1874, of which loss and destruction the defendant had notice; that the defendant owed the plaintiff the sum of $1000 and interest. Answer, a general denial.

At the trial in the Superior Court, before *Pitman*, J., the authority of the defendant's agents to make, and the question whether they in fact made, such a contract were the substantial issues.

It appeared in evidence that one Winward, a clerk of a firm of insurance brokers, acting in behalf of the plaintiff, on August 17, 1874, made an application for insurance on the plaintiff's building to the local agents of the defendant in Boston, whose printed certificate of appointment, signed by its president and secretary, and produced in evidence by the plaintiff, was as follows :

" Home Insurance Company, City of Columbus, State of Ohio. Be it known that Freeman & Vinton, of Boston, in the County of Suffolk and State of Mass., are appointed, and by these presents duly constituted, local agents of the Home Insurance Company, of Columbus, Ohio, with full power to receive proposals for insurance against loss and damage by fire and lightning, to receive moneys for the same, and countersign, issue, renew and consent to transfers of policies of insurance signed by the president and secretary of the said Home Insurance Company, and to make indorsements thereon, subject to the rules and regulations of said company and to such instructions as may from time to time be given by its officers. In witness whereof the said Home Insurance Company have caused their corporate seal to be affixed to these presents, and to be signed by their president and attested by their secretary in the city of Columbus, O., this tenth day of January, A. D. 1873."

Winward testified that he had been in the business nine years ; that said local agents agreed to place at once $1000 in the defendant company and bind it, and that the agents forthwith entered in a book, which was called a binding-book, a memorandum of what was done ; that the " form " of the policy was to be the same as in the Equitable Company, at the rate of five per cent. ; that the agents had carried a policy on the same property in the Equitable Office for months ; that no policy was to issue until one Balloch, the special agent having supervision of the defendant's business in New England, had seen the property and approved of the agents' writing a policy ; that he talked with Freeman, who said that he would bind it in the de-

fendant company; and that such an agreement takes effect the moment it is made.

The defendant's agents, called by the plaintiff, testified to the application in substantially the same terms; that the application was accepted, and they supposed the risk was bound in the defendant company; and that a policy was not to issue until approved by Balloch, upon his inspection of the property; and that there was a general usage among insurance companies and their agents to bind the companies by oral agreements until the policies could be conveniently issued.

Freeman testified that he had been the defendant's agent since 1869 or 1870; that he had previously insured this property in the Equitable Company, and was carrying a policy in that company at the time of the fire; that he had examined the property and was acquainted with the risk; that he was not limited to any particular risks; that application was made to him by Winward for this insurance; that he accepted it and made the memorandum in the binding-book; that there was a usage among insurance men that when so entered it was binding; and that he accepted it to hold till inspected by Balloch, the rate to be five per cent.

It also appeared that Balloch returned the day before the property was destroyed by fire, but did not inspect the property or approve the policy.

The book was produced in evidence, and contained the following memorandum:

" No. 447. Insurance is wanted by J. E. Putnam on Bldg Bbl Factory at 636 2nd St. S. Boston for $1000 = for 12 months from Aug. 17 1874. Binding in the Home Ins. Co. Hold for C. B. to inspect.

" Burned Sept. 5.                                        Agent."

It also appeared in evidence that this was a specially hazardous risk: that the local agents always had blank policies in their possession signed by the president and secretary of the company, and were accustomed to fill out and deliver the same without consultation with the officers of the company; that they had such policies at the time of this application and their action thereon, and could have filled the same out, but, instead of so doing, the issue of a policy was postponed for the approval of the special agent.

The local agents also testified that they had frequently issued policies for risks of the same class as this with the knowledge and consent of the defendant's officers, without submitting the same to the previous approval of any officer, or agent of the company, and they had not in any instance made any oral contract, like the one in suit, for this company, when the issue of the policy was to be subject to the approval of any such officer or agent; that they were accustomed to bind the company until the policy could be conveniently filled out, and that said oral contracts were not for any limited number of days, but were indefinite and until the policy issued.

The plaintiff testified to his ownership of the property; that its value was greater than the total amount of insurance; and that it was entirely destroyed by fire on September 5, 1874.

The defendant offered no evidence, but requested the judge to instruct the jury that the action could not be maintained on this evidence; and that there was no evidence for the consideration of the jury that a contract was made as claimed, and that there was no evidence of any authority to make such a contract. The judge declined so to rule, and submitted the case upon instructions, among others not excepted to, which allowed the jury to pass upon the authority of the agents to bind the defendant, and upon the execution of the contract, as questions of fact.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*A. Russ*, for the defendant. The plaintiff produced and relied upon a written authority given by the defendant, containing in printed terms the limit of authority granted by the company to the agents with whom the plaintiff alleges the oral contract was made. The familiar principle of law, that a plaintiff, in such case, may rely upon an apparent authority beyond the limits of that expressly granted, to be inferred from acts or usage, cannot apply in a case like this, where the plaintiff produces and relies upon an express authority in writing, the terms of which are in no sense ambiguous. *Murdock* v. *Mills*, 11 Met. 5. *Bryant* v. *Moore*, 26 Maine, 84, 87. *Towle* v. *Leavitt*, 3 Foster, 360, 374. *Delafield* v. *Illinois*, 26 Wend. 192. The authority granted is to receive proposals, sign, issue, renew and consent to transfers of policies signed by the president and secretary, and to make

indorsements; and this authority was subject to rules and regulations of the company and to instructions of its officers.

An agent with a limited authority cannot exceed it, and, if he does, his principal will not be bound by his acts, unless he affirms them afterwards. *Fenn* v. *Harrison*, 3 T. R. 757. *Snow* v. *Perry*, 9 Pick. 539, 542. *Schimmelpennich* v. *Bayard*, 1 Pet. 264, 290. *Attwood* v. *Munnings*, 7 B. & C. 278.

The plaintiff's evidence expressly shows that the authority upon which he relied could not be enlarged by any rule, regulation or instruction unknown to him beyond the subject matter of signing, issuing, renewing, transferring and indorsing actual policies signed by the president and secretary. The party dealing with an agent, whose authority is limited, is bound to inquire and ascertain the extent of that authority. *Snow* v. *Perry*, 9 Pick. 539, 542. *Lobdell* v. *Baker*, 1 Met. 193, 201. *Dresser Manuf. Co.* v. *Waterston*, 3 Met. 9, 18. *Salem Bank* v. *Gloucester Bank*, 17 Mass. 1, 29. *Hale* v. *Mechanics' Ins. Co.* 6 Gray, 169, 173. *Banorgee* v. *Hovey*, 5 Mass. 11, 37.

That the agency was one of special and limited authority, and so known to the plaintiff, appears from the existence of a supervising intervening agent whose approval was to be obtained before the contemplated policy was to be issued. The case finds, that the risk was specially hazardous, and the authority which the agent undertook to exercise was anomalous and extraordinary, *a fortiori*, the plaintiff was bound to see that such authority existed. Wharton on Agency, § 139.

There is no fact found, and no evidence offered, from which the plaintiff had a right to infer the existence of an authority to make this contract. It was not within the enumerated powers of his agency. It was an anomalous, extrahazardous risk. The usual evidence of a contract, viz., a policy, was not to issue without the approval of a superior agent. These agents had never before undertaken to make such a contract as this.

*F. W. Hurd & E. P. Nettleton*, for the plaintiff.

AMES, J. No attempt has been made, in the argument for the defendant, to maintain the position that its local agents did not make substantially the contract which the plaintiff alleges that they did make. The evidence reported certainly tends to show that there was an agreement to insure the building, which

was intended to be binding upon the company from the moment of the entry upon " the binding-book ; " and to continue in force at all events until the premises should be inspected by the special agent, Balloch.

The only question remaining to be considered is whether there was any evidence of authority on the part of the local agents to make the contract. It was conceded that they had authority to receive applications for insurance, and that they were entrusted with blank policies signed by the president and secretary of the company which they were accustomed to fill out and deliver without consultation with the officers.

There was evidence to the effect that, with the knowledge and consent of the defendant's officers, they had frequently issued policies upon property of the same class as this risk, without submitting the same for the previous approval of any of those officers. The tendency of this evidence was to show that they acted, and made contracts of insurance, as general agents of the defendants, and were allowed so to do. The fact that the delivery of the policy was delayed until the special agent should have an opportunity to inspect the building is explained by the fact that the risk was considered specially hazardous ; and that the local agents left to the corporation the right of terminating the risk if the special agent should decide not to accept it. It would not follow that in the meantime the plaintiff was to stand uninsured. There is evidence that he considered himself, and was understood by the local agents, to be so insured ; that the amount and the rate of premium were agreed upon ; and that there was a usage among insurance companies and their agents to bind the company by preliminary oral agreements until policies could conveniently be issued. See *Baxter* v. *Massasoit Ins. Co.* 13 Allen, 320. It is well settled that an oral contract of insurance is binding, and that there is no rule of law requiring it to be in writing. *Sanborn* v. *Fireman's Ins. Co.* 16 Gray, 448. Under such circumstances, the plaintiff might have a right to rely upon the oral agreement, and for that reason might have failed to seek insurance elsewhere. The case finds that the instructions to the jury upon the general rules of law as to agency were not excepted to, and the jury may have found that the contract was within the apparent scope of the agent's employment.                    *Exceptions overruled.*