DANIEL SANFORD *vs.* ORIENT INSURANCE COMPANY.

Hampshire.     September 19, 1899. — October 20, 1899.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

*Fire Insurance — Breach of Contract to insure — Construction of Charter — Authority of Agent — Evidence.*

An insurance company, the charter of which authorizes it to "make insurance against loss by fire," and provides that its policies "may be made with or without the common seal of said corporation, and shall be signed by the president and countersigned by the secretary of said corporation, and being so signed and executed, and the premiums thereon being paid, shall be obligatory on said corporation," may make a preliminary contract to insure property to be consummated by executing and delivering a policy pursuant thereto.

A person, who for many years has been held out by an insurance company as a general agent to negotiate contracts of insurance and agree upon all the terms of the contract, and for that purpose is furnished with policies executed in

blank by the president and secretary of the company with authority to fill up and deliver the same to any person with whom he has made a contract, is authorized to make a preliminary contract to insure, binding upon the company, to be consummated by filling up and delivering a policy pursuant thereto.

It is no objection to the admission in evidence of the deed under which the grantee claims title to property of which he is in possession when a contract to insure it is made, that it was not properly acknowledged.

Conversations with the alleged agent of an insurance company at the time when a contract to insure property was made are admissible, in an action for breach of the contract, to show what the contract was, and it is within the discretion of the judge to admit them before proof of the agency; and a conversation after the loss, in which the plaintiff informed the agent of the loss and asked him for the policy, and the agent replied that he did not have the policy or any record of it, is also admissible.

Where the first count of the declaration in an action, upon which the case was submitted to the jury, alleges an agreement to insure the plaintiff's property, and the second count alleges that the property was insured by the defendant, no exception lies to the admission in evidence of a proof of loss, the receipt of which is admitted by the defendant, if the bill of exceptions does not show that, when the evidence was admitted, the plaintiff did not intend to rely upon the second count.

The fact that a person acting as agent of an insurance company did not submit the risks taken by him to the company for its approval before he wrote and delivered the policies is admissible, in an action against the company for breach of a contract made by him to insure property, as bearing upon the nature of his authority.

Private instructions given by an insurance company to its agent, and not communicated or known to a person with whom he makes a contract to insure property, are properly excluded in an action against the company for breach of the contract.

If an agent of an insurance company makes a contract with the mortgagor of property to insure it, the policy to be made payable, as his interest may appear, to the mortgagee, who is intending, if necessary, to keep it insured himself and to pay for the insurance, conversations between him and the agent upon that subject are admissible in evidence in an action against the company for breach of the contract.

CONTRACT. The declaration contained four counts, the first of which alleged that the defendant on May 6, 1893, by its duly appointed agent, William Metcalf, made him a policy of insurance for the sum of $500, by the terms of which certain property therein described was insured by the defendant against loss or damage by fire for the term of three years from the date thereof; that in the latter part of April, 1896, and before the date on which the policy would expire, the defendant, by its agent, Metcalf, agreed with the plaintiff to renew the insurance for a period of three years from May 6, 1896, the date of the expiration of the policy, insuring the same property of the plain-

tiff for the same amount, and upon the same terms and conditions as were contained in such policy, and to issue to the plaintiff in due course a policy of insurance in accordance with such contract; that the plaintiff thereupon paid to the agent of the defendant, Metcalf, the full amount of the premium for such new policy; and that on October 11, 1897, a part of the property insured by the defendant under such policy was totally destroyed by fire, and the defendant's agent, Metcalf, was duly notified thereof, and on November 9, 1897, proof of the loss was filed with the defendant by the plaintiff, and the defendant was bound by the terms of the policy to pay the plaintiff the amount of such loss within sixty days thereafter, but had not paid the same.

The second count alleged that in the latter part of April, 1896, the plaintiff was the owner of a certain tract of land situate in Ware, on which, with other buildings, was a dwelling-house of the value of $350; that in the latter part of April, 1896, the defendant, by its duly constituted agent, Metcalf, in consideration of a premium to him paid by the plaintiff at the time, agreed to insure the plaintiff against loss or damage to the dwelling-house by fire, for the sum of $300 for .the term of three years from May 6, 1896, the day on which a policy issued by the defendant to the plaintiff covering the same property and for the same amount would expire; and that the dwelling-house was totally destroyed by fire on October 11, 1897, of which loss the defendant had due notice and proof, and owed the plaintiff the sum of $300 and interest. Each count was amended by alleging that the defendant wrongfully neglected to issue the policy.

The third count is not material to be stated. The fourth count alleged that in the latter part of April, 1896, the defendant insured a dwelling-house, the property of the plaintiff, against loss or damage by fire for the period of three years from May 6, 1896, in the sum of $300, and the plaintiff paid to the defendant the full amount of the premium therefor, and the defendant agreed to issue to the plaintiff, in due course, a policy of insurance in accordance with the contract; that the defendant had neglected and refused to issue to the plaintiff such policy, but had retained and concealed the same; and that the

dwelling-house was totally destroyed by fire on October 11, 1897, of which the defendant had due notice and proof, and that he owes the plaintiff the sum of $300 and interest.

At the trial in the Superior Court, before *Aiken*, J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions.    The facts appear in the opinion.

*W. H. Brooks & ·W. Hamilton*, for the defendant.

*H. M. Coney*, for the plaintiff.

HAMMOND, J.    The evidence for the plaintiff, if believed, would warrant a finding that a few days before the expiration of the original policy the plaintiff and Metcalf, assuming to act as the agent of the defendant, made an oral agreement by which the defendant was to renew the insurance upon the same terms as before, for three years from the expiration of the said policy; that within a reasonable time after such expiration a new one, embodying the agreement, should be issued to the plaintiff, payable in case of loss to Campbell, the mortgagee, as his interest might appear; and that meanwhile the property should be covered by the defendant.    The jury might further find that at the time of the agreement the plaintiff paid the premium, and that Metcalf was to send the policy to Campbell, and that no policy was ever made out.    The plaintiff did not claim that he made any other ·contract than this providing for insurance after the expiration of the original policy.

It is a little difficult to understand precisely whether this action, as stated in the first two counts as originally drawn, which, as amended, are the only counts upon which the case was submitted to the jury, is upon an oral contract of insurance, or upon a breach of a contract to issue a written policy of insurance; or, in other words, whether the claim of the plaintiff is that at the time of the fire his property was insured, or that the defendant had agreed to insure it and failed to do so, so that he has lost the benefit of insurance.

Perhaps, so far as concerns the rule of damages, as to which no exception arises, the question is immaterial; but when we come to examine into the nature of the power of the agent it may become material, for it is manifest that there is a difference between the power to make an agreement to issue a policy of insurance within a reasonable time, and meanwhile to keep the

property insured, and the power to make an oral contract of insurance extending as such over a period of years.

The presiding justice, however, at the trial, seems to have understood that the claim of the plaintiff as expressed in these two counts was that "there was an oral agreement to make such an instrument, to make a policy of insurance, and that agreement was not carried out," and on the whole we think the counts as amended will bear that interpretation.

The action, then, is not based upon the theory that at the time of the fire the property was insured, but that the agreement to insure it had "not been carried out," or, in other words, it is for the breach of the contract to insure.

It is settled that a contract like this need not be in writing ; *Sanborn* v. *Fireman's Ins. Co.* 16 Gray, 448 ; *Emery* v. *Boston Marine Ins. Co.* 138 Mass. 398 ; and, since it may be completely performed within a year upon the happening of a contingency, it is not within the statute of frauds. Browne, St. of Frauds, § 275. May, Ins. (3d ed.) § 23, C, and cases there cited. *Franklin Ins. Co.* v. *Colt*, 20 Wall. 560.

It was also within the corporate powers of the defendant, as expressed in its charter. The defendant was authorized generally to "make insurance against loss by fire," and the language describing the manner in which a policy should be executed is to be regarded as consisting simply of enabling words not restraining the general power to make contracts of which the policies are the evidence, especially when applied to a preliminary contract like this.* *Sanborn* v. *Fireman's Ins. Co., ubi supra.* *Brown* v. *Franklin Ins. Co.* 165 Mass. 565. May, Ins. (3d ed.) § 23, D.

The contract, therefore, was such as the defendant had the power to make.

The defendant, however, contends that Metcalf was not authorized to make the contract on its behalf. In considering

---

* This provision of the charter was as follows : " Said policies and all other contracts of said corporation may be made with or without the common seal of said corporation, and shall be signed by the president and countersigned by the secretary of said corporation, and being so signed and executed, and the premiums thereon being paid, shall be obligatory on said corporation."

this contention it is to be borne in mind that the contract did not contemplate that the evidence of it should be entirely oral during its continuance. On the contrary, it was expressly agreed that a new policy should be made out and delivered to the mortgagee, and that only during the interval between the expiration of the old policy and the time for the delivery of the new one, should the property be covered under the oral agreement. In other words, it was only a preliminary agreement preceding the stipulated delivery of the policy, which, after such delivery, was to be the permanent evidence of the contract.

It appears by the written power of attorney given by the defendant to Metcalf that he was appointed the "agent" of the company and was "authorized to issue the policies and renewal receipts furnished by" it and "countersigned by him as agent, and to do such other business as they shall in writing instruct and authorize said agent to do, or as is permitted by the printed instructions to agents furnished him by" the company.

It further appears by the testimony of Metcalf that he had been engaged in the insurance business for about twenty years, and that he had been the agent of the defendant in Ware ever since the date of ·his commission in March, 1877, and as such had done business for it to a considerable amount; that as its agent he had surveyed, examined, and solicited risks, fixed the rates as regulated by a board of underwriters, issued policies properly signed by the president and secretary and countersigned by him, had written the policies and received the premiums; and that he was in the habit of doing all this without first submitting the risks to the company.

This method of transacting business had existed for years with the sanction of the defendant, and it must therefore be considered as holding out Metcalf as its agent to do all such things. He was held out as a general agent to negotiate contracts of insurance, agree upon the rate of premium, the term of insurance and all the terms of the contract, and for that purpose he was furnished with policies executed in blank by the president and secretary, with authority to fill up and deliver the same to any person with whom he made a contract. This authorized him to make a preliminary contract binding

upon the defendant, to be consummated by filling up and delivering a policy pursuant thereto. In other words, he was authorized to make a valid preliminary contract like the one in suit, and this is so whether or not he was authorized to make a simple oral contract not contemplating the issue of a policy.

To hold otherwise, and to require the written policy which is only the permanent evidence of the contract to be issued immediately upon the presentation of the application for insurance, would so seriously cripple and hamper an agent having the general authority possessed by Metcalf as to be manifestly inconsistent with the proper exercise of his authority, and without doubt would be contrary to the general method in which the insurance business is transacted. May, Ins. (3d ed.) § 129. *Ellis* v. *Albany City Ins. Co.* 50 N. Y. 402. *Angell* v. *Hartford Ins. Co.* 59 N. Y. 171. *Franklin Ins. Co.* v. *Colt, ubi supra.*

Upon the undisputed facts the court correctly ruled that Metcalf had authority as the agent of the defendant to make the agreement. The defendant not having issued the written policy within a reasonable time has committed a breach, and is liable in damages.

As the action is not upon the policy but upon the breach of the contract to deliver it, the provisions which were to be inserted in the policy as to the mortgagee and as to arbitration are not applicable.

No question arises as to the rule of damages.

The several exceptions as to the admission and rejection of evidence remain to be considered.

The only objection to the admission of the deed to the plaintiff was that it was not properly acknowledged. As between the parties to this suit it was not necessary that it should be acknowledged at all. The plaintiff claiming title under it was in possession of the property, and that was sufficient evidence of ownership to give him an insurable interest.

The conversations with Metcalf at the time of the contract were admissible to show what the contract was, and it was within the discretion of the court to admit them before proof of the agency of Metcalf.

As to the subsequent conversations between the plaintiff and the agent, we see nothing prejudicial to the defendant.*

The admission of the proof of loss went no further, except as to the amount of loss, than the admission of the defendant, that it had been received. Although the case was finally submitted to the jury upon only the first two counts of the declaration, yet it does not appear from the bill of exceptions but that the plaintiff at the time the paper was admitted was intending to rely upon the fourth count; and it was admissible upon that count.

The fact that Metcalf did not submit his risks to the defendant for their approval before he wrote and delivered the policies had a direct bearing on the nature of his authority, and was admissible.

The private instructions given by the defendant to Metcalf, not having been communicated or known to the plaintiff, were inadmissible so far as they were inconsistent with his apparent general authority, and in all other respects were immaterial and were properly excluded.

Campbell, the mortgagee, was interested in this contract of insurance because the policy was to be made payable to him in case of loss as his interest might appear, and he was intending if necessary to keep it insured himself and to pay the insurance. The conversations between him and Metcalf were upon that subject, and therefore admissible as statements made by the agent in the transaction of the business.

*Exceptions overruled.*

---

* The plaintiff testified in relation to this conversation with Metcalf as follows : " I told him my house was burned; he replied, 'I must have the policy in order to notify the company'; I asked him if he had n't got it, and he said ' No '; I said it must be up to Mr. Campbell's, and I went up to Mr. Campbell's. I did not find the policy there; I returned to Mr. Metcalf the next day; I went into his office and he told me that he had no records of that policy whatever; I asked him in the first place if Mr. Campbell had fetched the policy down to him, and he said no, and he had no records of it, and we had no more conversation."