ELLEN E. McQUAID *vs.* ÆTNA INSURANCE COMPANY.

Suffolk.    November 24, 1916. — March 5, 1917.

Present: RUGG, C. J., LORING, DE COURCY, CROSBY, & CARROLL, JJ.

*Insurance,* Fire.  *Agency,* Scope of authority.  *Words,* "You are covered."

Under the statutes of this Commonwealth temporary contracts of insurance may be
made orally.

If the agent of an insurance company upon an application for insurance against fire
and after an oral agreement as to the terms of the contract says to the applicant,
"you are covered," this commonly means, and can be found to mean, that the
property shall be insured, in accordance with the terms of the standard form of
policy, for a reasonable time considering all the attendant conditions, until a
policy in writing in the Massachusetts standard form can be issued.

A temporary oral contract of insurance of the kind above described expires after
the lapse of a reasonable time without the issuing of a policy in writing.

Where the applicant for a policy under such a temporary oral contract of insurance
against fire, who had made a part payment of the premium at the time of such
oral agreement and had promised to return to the office of the insurer to settle
and who lived within a few miles of that office, did not return and nothing was
done on either side until five months later when the property to be insured was
destroyed by fire, in an action on the oral contract of insurance it was *held* that
a reasonable time had elapsed and that the temporary oral contract had
expired.

It cannot be presumed that an ordinary insurance agent can bind an insurance
company by oral contracts for fire insurance except for temporary purposes or
on occasions akin to emergencies.

CONTRACT, the first count on an alleged policy of insurance, on
which count it was conceded by the plaintiff that there was no
evidence, and the second count on an alleged oral contract of in-
surance against fire for a period of six months from July 24, 1913,
on household furniture to the amount of $2,000 in a certain
dwelling house in Squantum, which was destroyed totally by fire
on December 23, 1913.    Writ dated March 14, 1914.

In the Superior Court the case was tried before *Brown,* J.
The evidence is described in the opinion.    At the close of the evi-
dence the defendant asked the judge to order a verdict for it.
This the judge refused to do.    The defendant then asked the judge
to make the following rulings:

"1.  Upon all the evidence the plaintiff cannot recover.

"2. Upon all the evidence the jury cannot properly find that the defendant entered into, with the plaintiff, any such contract as is set forth in either count of the plaintiff's declaration.

"3. If, upon all the evidence, the jury could properly find that by reason of what took place on or about July 24, 1913, a contract was entered into between the plaintiff and the defendant, such contract would, by implication, be subject to the terms and conditions of the Massachusetts standard form of fire insurance policy, prescribed by St. 1907, c. 576, § 60, and the plaintiff cannot recover because there is no evidence from which the jury can properly find either that the amount of loss or damage caused by the fire in question was agreed upon, or that the amount of such loss and damage was determined by arbitration, or that the plaintiff requested the defendant to submit the question of the amount of such loss and damage to arbitration, or that the defendant waived reference to arbitration of such question."

The judge refused to make any of these rulings and submitted the case to the jury with other instructions.

At the conclusion of the charge the defendant excepted to a portion of the charge wherein in substance the judge instructed the jury that under the second count of the plaintiff's declaration there might be a recovery if the jury found that there was a contract made between the plaintiff and the defendant on July 24.

The jury returned a verdict for the plaintiff in the sum of $1,600; and the defendant alleged exceptions.

*W. L. Came,* for the defendant.

*P. H. Kelley,* for the plaintiff.

Rugg, C. J. There were two counts in the plaintiff's declaration. The first was based on the theory that the defendant had insured her property by the issuance of a written contract of insurance. At the trial it was conceded by the plaintiff that there could be no recovery on that count and it drops out of the case. The second count, which now alone is material, alleged that the defendant on July 24, 1913, orally agreed with her to and did then insure her property against loss by fire for a period of six months in the sum of $2,000. The plaintiff's case is not that there was a contract to insure in the future which has been broken, but an actual oral insurance under which she is entitled to recover.

It has been decided in numerous cases that oral contracts of

insurance are valid. *Sanborn* v. *Fireman's Ins. Co.* 16 Gray, 448. *Putnam* v. *Home Ins. Co.* 123 Mass. 324. *Emery* v. *Boston Marine Ins. Co.* 138 Mass. 398. *Brown* v. *Franklin Mutual Fire Ins. Co.* 165 Mass. 565. *Cunningham* v. *Connecticut Fire Ins. Co.* 200 Mass. 333, 335. It was urged in argument in *Goodhue* v. *Hartford Fire Ins. Co.* 175 Mass. 187, 191, that our modern insurance statutes imply that all insurance shall be in writing. But it there was said by Chief Justice Holmes that "The contrary is settled, at least with regard to temporary contracts such as is alleged in the second count. *Sanford* v. *Orient Ins. Co.* 174 Mass. 416."

The plaintiff's rights depend upon the terms of the contract which she offered evidence tending to prove. The testimony of the plaintiff upon this point was in substance that, having long done business with one Mercer, an assistant or co-manager or agent for the defendant, she went to his office on July 24, 1913, and on inquiry was told that he was out; that one Oates asked what she wanted and to him she said that she wanted to get insurance for six months in the sum of $2,000 on everything (with a few named exceptions) in a twenty-three room house at Squantum, the location of which she described; that she was told that the rate would be $8 per thousand; that Oates wrote a memorandum of what she wanted and she requested him to give it to Mercer; that "Oates then said to her that he would give it [to Mercer] and that she not worry that she was covered;" that she then paid $3 and told "Oates that she would be in later to settle up." She received no communication from Mercer, Oates or the defendant, and did not go to the office again until after the goods were destroyed by fire on December 23, 1913. The testimony of Oates was altogether different.

No policy of insurance was made out. The plaintiff's case must stand or fall on her own statement of the contract. The essence of her statement of what occurred is that the agent, after making notes of the facts material for writing a policy of insurance, said that she was "covered." The case turns on the significance of these words. That must be determined from all the circumstances under which they were used, including the person to whom they were addressed and the person by whom they were uttered. They were addressed to a woman who had come in search of another man

named Mercer, an assistant or co-manager at the Boston office of the defendant, with whom she before had done business, and who directed Oates to give to Mercer the memorandum of the facts necessary for the writing of a policy of insurance, which he had committed to paper in her presence. They were spoken by Oates, who was not in the employ of Mercer but of the defendant. The narrow question is, what the words "you are covered" mean when addressed to a woman occupying the relation which the plaintiff did to the defendant and its representative, Mercer, under all the circumstances here disclosed. The words "you are covered" are in common usage in reference to insurance. The meaning of those words ordinarily as applied to fire insurance is that the property shall be insured in the standard form of insurance from that instant for a reasonable time until either the policy or policies can be written out or their issuance approved or disapproved by authorized representatives of the insurer, or some other temporary impediment to the complete and formal contract of insurance may be removed. It constitutes insurance for a reasonable time considering all the attendant conditions. It refers to a temporary and not a permanent condition of insurance. It does not mean, commonly, that the property shall continue to be insured for a substantial term after the expiration of a reasonable time for the execution of a formal contract or the determination of other preliminary matters. The signification of the phrase "you are covered" would not be enlarged, ordinarily or under the facts here disclosed, even though the authority of the agent were far broader than that of Oates. It is at least the purport of our insurance laws that all contracts for fire insurance shall be according to the standard form there established. St. 1907, c. 576, §§ 3, 59, 60. Oral contracts by implication must have read into them this form. A simple contract by an insurance agent that property shall be covered by insurance does not signify in the ordinary case that it shall continue to be insured after the lapse of months without a formal policy of insurance. It cannot in reason stretch to the perpetuation of actual insurance up to the time of the fire under the circumstances here disclosed. Five sixths of the term had expired. Only $3 out of the $16 were paid. There was no written acknowledgment or oral confirmation of the continuance of the cover. The plaintiff lived all the time within a few miles of the defendant's office. There are no extraordinary

facts. She promised to return to settle, which must naturally have been understood to mean within a reasonable time having regard to the nature of the transaction in hand. Manifestly it was the contemplation of both parties that a policy of insurance sometime should be made out. Apparently it was the plaintiff's intent that it should be made out by Mercer as soon as he could attend to it after his return to the office. Ordinarily an insurance "agent" has authority only "to make valid oral contracts of insurance for some temporary purpose incidental to the issuing of policies for long periods of time." *Baker* v. *Commercial Union Assurance Co.* 162 Mass. 358, 373. *Scammell* v. *China Mutual Ins. Co.* 164 Mass. 341, 343, 344. The plaintiff could not rightly assume that Oates was clothed with any greater authority than the ordinary insurance agent.

It is apparent that the authority of the ordinary insurance agent must be so limited when regard is had to the elaborate system established by St. 1907, c. 576, and acts in amendment thereof, for the ascertainment of the financial responsibility and standing of insurance companies and the suspension by the insurance commissioner of permits to do business to those companies which are not financially sound. It cannot be presumed in the absence of special authority that an ordinary insurance agent can bind insurance companies by oral contracts of insurance for other than temporary purposes or on occasions akin to emergencies. Otherwise insurance companies might be involved in liabilities of which they might have no record, or insufficient records, for inspection by the commissioner and their financial soundness be difficult if not impossible of ascertainment.

If the plaintiff was depending upon herself it was her duty, in order to be insured for the entire period, to do something within a reasonable time to make certain that the cover had ripened into a formal contract of insurance. If she chose to rely upon the agent of the defendant, she must prove that that was done by him.

Although the plaintiff testified that she had placed her insurance for many years through Mercer, and it had been his custom to keep her policies until the premiums were paid in full, and they often were paid in instalments, this does not justify reliance upon a simple agreement to cover her property by insurance long after the expiration of a reasonable time for the completion of the con-

tract by the preparation of a formal policy of insurance. The contract that the plaintiff's property was covered simply meant that it was insured for a reasonable time until under all the circumstances a formal policy of insurance could be made out. In order to recover a loss by fire sustained after the expiration of such reasonable time, there must be proof of the formal policy. The plaintiff therefore failed to make out a case. It becomes unnecessary to consider the other difficulties which lay across the pathway to recovery by the plaintiff.

The verdict should have been directed for the defendant in accordance with its first request for instructions. The defendant's exceptions are sustained and, in conformity with St. 1909, c. 236, judgment is to be entered in the Superior Court for the defendant and rescript is to go to that effect.

*So ordered.*