## CESAR CESANA *vs.* MARY C. JOHNSON.

Suffolk. December 4, 5, 1918. — March 6, 1919.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Agency*, Broker's commission. *Evidence*, Competency, Of mental action, Of custom, Extrinsic affecting writings. *Contract*, In writing. *Practice, Civil*, Amendment, Exceptions.

In an action by a real estate broker to recover a commission for procuring a lease of real estate of the defendant, where the declaration alleged that a lease of the defendant's real estate in question to the former lessee at a much higher rent resulted from the plaintiff's services, which had been directed toward leasing the premises to a certain new tenant at such higher rent, the agent of the lessee who had charge of leasing stores for the occupation of such lessee was called by the plaintiff as a witness and on his cross-examination was permitted to be asked by the defendant, subject to the plaintiff's exception, "What influence . . . did any of the quotations that were ever made to you have on your finally agreeing to take a lease of these premises on the terms at which you did take them?" and "What did influence you in taking this lease on the terms on which you took it?" To the first question the witness answered, "None, whatever," and to the second question answered, "Why, I felt that we could merchandise goods there and make a profit by so doing." *Held*, that the questions and answers were competent as tending to show that the taking of the lease was not procured by the plaintiff.

In the case above described the plaintiff contended that he had procured a tenant ready and willing to take a lease at the increased rent at which the defendant's former tenant finally took it and that an offer made by such proposed tenant was accepted by the defendant, but it appeared that the negotiations left undetermined the place, kind and quality of the alterations, not to exceed $30,000, which by the terms of the offer were to be "subject to the approval of the owners and the prospective lessees," and the plaintiff testified, on his cross-examination, that "only the money and solvency of the tenants was settled then; the repairs were never settled; no, sir, we never came to definite terms on the whole lease." *Held*, that the evidence would not warrant a finding that the prospective tenant and the landowner ever agreed on the final terms of the lease or that the defendant ever accepted any definite offer made by such prospective tenant.

In the same case the plaintiff further contended that he had proved a custom under which he was entitled to charge the usual commission. The alleged custom was, in substance, that where a real estate broker, employed for the purpose of getting an increased rent, secures a *bona fide* offer from a responsible person, if the owner takes such offer to the present tenant and thereafter that tenant's lease is extended at the figure of the new offer, the broker is entitled to a full commission on the gross rent. It appeared that the plaintiff was employed

under a contract in writing, which provided that he should get a commission only if he secured a tenant acceptable to the defendant and "providing they will pay what I [the defendant] consider to be a fair rental and providing other conditions are satisfactory to me." *Held*, that, even if the custom alleged had been proved by the evidence and was applicable to the facts of the case, it could not be used to contradict the plain provisions of the express contract which the parties had made and to substitute another contract which they had not made.

In the same case the plaintiff also contended that the defendant acted in bad faith, especially by negotiating with his present tenant without notifying the plaintiff and by quoting to such tenant the amount of the rent offered by the prospective tenant alleged to have been procured by the plaintiff without disclosing by whom the offer was made. It appeared that the plaintiff never had approached the defendant's present tenant and that that tenant was not induced to take a new lease of the premises by any efforts of the plaintiff, and that the defendant only had sought to induce his present tenant to continue as lessee at an increased rent when it appeared doubtful whether the defendant and the prospective tenant alleged to have been procured by the plaintiff could come to terms. *Held*, that the mere fact that the defendant quoted to his present tenant the amount of rent offered by the plaintiff's alleged customer was not evidence of bad faith or of a purpose to defraud the plaintiff.

In the same case the plaintiff also contended that he was entitled to a commission on the ground that by his agreement with the defendant he had the exclusive right to lease the real estate in question at the time that the defendant gave the new lease to his present lessee. The plaintiff testified that shortly before the new lease was made the defendant said to him "that he was not negotiating with anybody for that property, that I knew that I was the only one that was handling the matter." If this and other evidence of the plaintiff was believed, it could have been found that the defendant had agreed that no other broker or agent should be employed to lease the premises and that the procurement of the new lease to the old tenant at the increased rent by another broker employed by the defendant was a breach of this agreement. The question of exclusive agency appeared to have been presented fully by the evidence at the trial, but the plaintiff's declaration contained no allegation of exclusive agency. The judge ordered a verdict for the defendant, and the plaintiff alleged exceptions. *Held*, that the ordering of the verdict by the judge was right on the pleadings before him, but that, if within thirty days the Superior Court should permit the plaintiff to amend his declaration by adding one or more counts to cover the issue of exclusive agency, the exceptions should be sustained, and that otherwise they should be overruled.

CONTRACT by a real estate broker to recover a commission of $5,123.66, amounting to one per cent on the gross rent of real estate of the defendant numbered 633 on Washington Street in Boston payable by the W. L. Douglas Shoe Company under a lease from the defendant to that company for twenty years and six months from January 1, 1917, alleged to have been procured by the plaintiff. Writ dated April 13, 1916.

In the Superior Court the case was tried before *J. F. Brown, J.*

At the close of the plaintiff's evidence, which is described in the opinion, the judge on motion of the defendant ordered a verdict for the defendant; and the plaintiff alleged exceptions, including exceptions to the admission and exclusion of certain evidence.

Among the exceptions to the admission of evidence were the following, which are referred to in the opinion:

One Packard, called as a witness by the plaintiff, testified that he lived at Brockton and had full charge of the real estate department of the W. L. Douglas Shoe Company, with which he had been connected for eighteen or nineteen years, and that his duties included the leasing of property for the occupation of stores by the W. L. Douglas Shoe Company. On his cross-examination this witness was asked by the defendant, "What influence, Mr. Packard, did any of the quotations that were ever made to you have on your finally agreeing to take a lease of these premises on the terms at which you did take them?" The question was objected to and the judge permitted the witness to answer it subject to the plaintiff's exception. The examination then proceeded as follows:

"Q. You may answer. A. May I ask you to repeat the question? (Question repeated by the stenographer.) A. I don't understand the question. Made by who? Q. By anybody, by Mr. Reddy. A. None whatever, sir. Q. Had no influence whatever on your finally taking the lease?' A. No, sir. Q. What did influence you in taking this lease on the terms on which you took it? . . . A. Why, I felt that we could merchandise goods there and make a profit by so doing." All of these questions and answers were admitted subject to the plaintiff's exception.

The case was argued at the bar in December, 1918, before *Rugg*, C. J., *Loring, Braley, De Courcy, & Pierce*, JJ., and afterwards was submitted on briefs to all the justices.

*C. F. Eldredge*, for the plaintiff.

*A. M. Graham*, for the defendant.

DE COURCY, J. This is an action by a real estate broker to recover a commission for services in connection with the leasing of property on Washington Street, Boston, owned by the defendant. Negotiations with the plaintiff were conducted by the defendant's husband, Herbert S. Johnson, and it is agreed that he acted as her duly authorized agent. In May, 1914, when the plaintiff's services

began, the premises were occupied by the W. L. Douglas Shoe Company, at a yearly net rent of $13,000, under a lease which would expire on January 1, 1917. The plaintiff's efforts were mainly exercised in endeavoring to secure Messrs. Sallinger and Mitchell (referred to hereafter as Sallinger) as tenants; and he had many consultations and considerable correspondence, especially with their broker Fishel and with Johnson, endeavoring to bring about. that result. About the middle of January, 1915, Johnson's agent or attorney began negotiations with the W. L. Douglas Shoe Company; and these resulted in a new lease to that company on April 15, 1915, for a term of twenty years and six months from the expiration of the existing lease, and at a net yearly rent of approximately $19,500.

1. We find no error in the admission or exclusion of evidence. In view of the plaintiff's allegation that the lease to the W. L. Douglas Shoe Company resulted from his efforts, it was competent for the defendant to ask that company's agent, on cross-examination, "What influence . . . did any of the quotations that were ever made to you have on your finally agreeing to take a lease of these premises on the terms at which you did take them?" and "What did influence you in taking this lease on the terms on which you took it?" The contents of the written application made for a loan on the premises, by the defendant's agent, were immaterial. The plaintiff did not claim any commission for securing a loan.

2. The plaintiff contends that he was entitled to go to the jury on the ground that he procured a customer ready, able and willing to take a lease; and further that an offer submitted by Sallinger was accepted by the defendant. But Sallinger's final offer, made by his broker Fishel on January 11, 1915, left still undetermined the location, kind and quality of the alterations, not to exceed $30,000, which were to be (as the offer expressly recited) "subject to the approval of the owners and the prospective lessees." Afterwards alteration sketches and specifications were submitted back and forth, but nothing definite had been agreed upon when Johnson wrote to the plaintiff, February 26, 1915, enclosing a statement of the necessary improvements suggested by his architect, to be forwarded to Sallinger for approval or additions; nor when the plaintiff wrote to Johnson, April 29, 1915, that Sallinger

was dissatisfied "and would not continue to negotiate any further."

In apparent support of the plaintiff's contention that the Sallinger offer was accepted by the defendant, we are referred to the plaintiff's testimony in cross-examination, that it was accepted "When Dr. Johnson called at my office, January 13." But he subsequently explained this by testifying "Only the money and solvency of the tenants was settled then; the repairs were never settled; no, sir, we never came to definite terms on the whole lease."

An examination of all the evidence discloses that the jury would not have been warranted in finding that the prospective tenant and the landowner ever agreed on the final terms of a lease, or that there was an acceptance by Johnson of a definite offer submitted by Sallinger. *Woods* v. *Matthews*, 224 Mass. 577, 585. *Bruce* v. *Meserve*, 228 Mass. 463.

3. The plaintiff further contends that he proved a custom or usage under which he was entitled to charge the usual commission. The alleged custom was, in substance, that when a real estate agent, employed for the purpose of getting an increased rent, secures a *bona fide* offer from a responsible person, if the owner takes such offer to the present tenant, and thereafter that tenant's lease is extended at the figure of the new offer, the agent is entitled to a full commission on the gross rent. Without considering other objections, the alleged usage could not apply in this case, where the plaintiff was employed under a contract providing that he should get a commission only if he secured a tenant acceptable to the owner, and "providing they will pay what I [Johnson] consider to be a fair rental and providing other conditions are satisfactory to me." Even if the evidence should be interpreted as proving the existence of a custom applicable to the facts of this case, it could not be used to contradict the plain express contract which the parties made, and to substitute therefor a new contract which they had not made. *Menage* v. *Rosenthal*, 175 Mass. 358. *Boruszewski* v. *Middlesex Mutual Assurance Co.* 186 Mass. 589.

4. Another contention of the plaintiff is that Johnson acted in bad faith, especially by negotiating with the W. L. Douglas Shoe Company without notifying the plaintiff, by quoting to that company the rents offered by Sallinger, and by continuing to avail

himself of the plaintiff's continued negotiations with Sallinger and his services in getting out plans, specifications and bids on suggested alterations, even after he (Johnson) had given an option to the Douglas company. The difficulty with the plaintiff's legal claim is that he never had approached the Douglas company, and that it was not induced to lease the premises through any efforts of his. This is not a case where the owner in bad faith revokes the broker's authority and himself leases the property to the broker's customer. *O'Connell* v. *Casey*, 206 Mass. 520. When, after prolonged negotiations, it appeared doubtful whether Sallinger and the defendant would agree upon terms, Johnson's agent or attorney sought to induce the Douglas company to continue as tenant, at an increased rent. The mere fact that the rent already offered was quoted to that company, (without disclosing by whom it was made,) did not in itself constitute evidence of bad faith and a purpose to defraud the plaintiff. *Bowes* v. *Henry*, 228 Mass. 341, and cases cited.

5. The plaintiff further argues that he is entitled to a commission on the ground that he had the exclusive right to lease the premises at the time the lease was made to the W. L. Douglas Shoe Company. See *Viking Manuf. Co.* v. *Smith*, 226 Mass. 10. On this issue there was evidence tending to prove the following facts: On May 8, 1914, the plaintiff wrote to Herbert S. Johnson about some property on Huntington Avenue, and Johnson replied: " . . . You can approach Thomas F. Reddy about it. He is our attorney and has handled our real estate transactions for us." In response to this, and a letter from Mr. Reddy, he conferred with the latter about different properties he (Reddy) had for sale, including a lease of 633 Washington Street. The plaintiff said he would give Reddy a percentage of the commission. In subsequent letters and conversations the plaintiff insisted that he would not undertake to get a tenant unless the matter was placed exclusively in his hands. On May 23 the plaintiff wrote to Johnson that as he might have to pay one half of the commission to a broker for the lessee, he could not pay an additional thirty per cent to Mr. Reddy; and was then informed by Mr. Reddy that he could not have the exclusive letting of the property. Later, on the plaintiff's testimony, Johnson orally agreed to "leave Mr. Reddy out entirely," and allowed the plaintiff "to make this rental." Sometimes the

language they used was "the exclusive right to lease the premises," and at other times "the exclusive agency." As late as December, according to the plaintiff, Johnson said to him "that he was not negotiating with anybody for that property, that I knew that I was the only one that was handling the matter."

There also was evidence that at the beginning, when the plaintiff suggested the advisability of his seeing Mr. Douglas or the present tenant, Johnson said that he had tried to interest them, that they would not pay an increased rent nor renew the lease, and "it was not any use to see them." The evidence was uncontradicted that Mr. Reddy opened negotiations with the Douglas company in January, 1915, for a new lease, and the negotiations were carried on and concluded by him.

If the plaintiff's testimony was believed the jury could find that Johnson at least had agreed that no other broker or agent should be employed to lease the premises; and that the procurement of a lessee by Mr. Reddy was a breach of such agreement.

This question of exclusive agency apparently was fully tried out in the trial court, and has been argued before us. It is now urged by the defendant that there was no allegation of exclusive agency in the plaintiff's declaration; and that the direction of a verdict should stand as the judge acted under the pleadings before him. *Granara* v. *Jacobs*, 212 Mass. 271, 275. For this reason, if within thirty days the Superior Court shall permit the plaintiff to amend his declaration by adding one or more counts to cover this issue, then the exceptions are to be sustained; otherwise, they are to be overruled. See *Day* v. *Mills*, 213 Mass. 585, 587, and cases cited.

*Ordered accordingly.*