PARK AND POLLARD COMPANY *vs.* AGRICULTURAL INSURANCE COMPANY.

SAME *vs.* EQUITABLE FIRE AND MARINE INSURANCE COMPANY.

Suffolk. January 13, 1921. — March 10, 1921.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & JENNEY, JJ.

*Insurance,* Fire, Authority of agent. *Evidence,* Presumptions and burden of proof, Foreign law. *Agency,* Scope of authority. *Practice, Civil,* Report, New trial.

If, at the trial of an action upon an oral contract of insurance made in another State, the law of that State upon the subject matter of the action is not in evidence, it will be presumed to be the same as the common law of this Commonwealth.

An agent of a fire insurance company, having authority to countersign and to issue policies already signed by the officer of the company, by implication therefrom also has authority to make oral contracts for temporary protection of one seeking insurance; and, unless the person so seeking insurance has some notice of limitation of authority of the agent, a contract so made is binding on the company.

An agent of a fire insurance company with full power to receive proposals for insurance against loss by fire, to countersign, issue and make indorsements upon policies of insurance signed by the proper officers of the company, to collect premiums and consent to assignments of policies, and to attend to the business of his agency in accordance with the rules and regulations of the company and such instructions as may be given by its officers, and who is put in possession of blank policies, signed by the officers, which he is authorized to countersign and to issue, has implied authority to make on behalf of the company an oral contract of temporary insurance against loss by fire.

At the trial of an action against an insurance company for alleged breach of an oral contract relating to insurance, there was evidence tending to show that a broker representing the plaintiff interviewed an authorized agent of the defendant upon the subject of insurance and later talked with him on the telephone, when the defendant's agent stated that "he could take" a certain amount at a certain premium in the defendant company; that the broker asked the defendant's agent if there was any question about the insurance being binding and the agent "said, 'no' . . . and asked whether he should use a . . . form which he had;" that the broker said that he "would prefer to have the form sent to him" from the home office of the company "so that all policies would be the same and asked" the agent "to confirm the fact that he was binding . . . insurance," and that the agent said that "he would do so;" and that, two days after the telephone conversation, before any confirmation was given by the defendant's agent or any policy was delivered, the insured property was destroyed by fire. *Held,* that

(1) A finding was warranted that an oral contract was made that the plaintiff should be protected against loss of the property by fire at least for a reasonable time within which a policy would be issued;

(2) Such a contract was valid;

(3) The fact that it was necessary to procure further information before the formal policy could be issued did not prevent the making of such an oral contract for temporary insurance.

The declaration in the action above described contained three counts, the plaintiff alleging in the first count that the defendant had agreed to insure the property for one year and had not done so; in the second count that the defendant had agreed to issue to the plaintiff without delay a policy of insurance for one year and to keep the property insured in the interval previous to the issuance of the policy; and in the third count that the defendant had insured the plaintiff for one year. Upon the evidence above described, the judge ordered a verdict for the defendant and reported the action to this court "for determination," it being stipulated that, if the ordering of the verdict was error, judgment should be entered for the plaintiff in a certain sum, and that otherwise judgment should be entered on the verdict, the only mention of pleadings made in the report being a statement that they "are not set forth herein but may be referred to and considered as a part of this report." Having determined that

the evidence would support a finding that the defendant made with the plaintiff a valid oral contract of insurance for a reasonable time within which a policy would be issued, it was *held*, that

(1) The action was not maintainable upon either of the counts of the declaration as they stood;

(2) It was uncertain whether the ordering of the verdict was made with reference to the pleadings; and *it was ordered* in substance that judgment should be entered for the defendant unless, within thirty days from the entry of the rescript, the plaintiff should be allowed to amend the declaration by inserting one or more new counts to raise the issue relating to the alleged oral contract for temporary insurance; and that, if such amendment should be allowed, there should be a new trial.

TWO ACTIONS OF CONTRACT for breaches of contracts relating to insurance, the declaration in each action containing three counts, the first count containing, besides allegations as to the loss of the insured property and the performance of conditions precedent to recovery, allegations that on or about July 18, 1918, the parties "entered into a contract by which the defendant agreed to insure certain bags" for one year and that the defendant failed to insure in accordance with its contract; the corresponding allegations of the second count being that on or about that date the parties "entered into a contract by which the defendant agreed to issue to the plaintiff without delay a policy" to be for the term of one year "and to keep said bags insured . . . in the interval prior to the issuance of said policy;"and those of the third count being that the parties "entered into a contract by which the defendant insured the plaintiff for the term of one year." Writs dated December 20, 1918.

The actions were tried together before *Sisk*, J. Material evidence is described in the opinion. At the close of the evidence, the judge ordered the jury to return verdicts for both defendants and by agreement of counsel reported both cases to this court "for determination, with the stipulation that if my order directing the verdicts was error, judgment shall be ordered for the plaintiff for the amounts indicated and agreed upon; otherwise, judgment to be ordered for the defendants."

The report stated: "The pleadings and admission of facts, [filed in response to motions under Rule 38 of the Superior Court (1915)] which were offered by the plaintiff and read at the trial, are not set forth herein but may be referred to and considered as a part of this report."

*J. C. Coughlin,* for the plaintiff.

*W. L. Came,* for the defendant, submitted a brief.

JENNEY, J.   These are two actions of contract to recover upon oral contracts as to insurance against loss by fire of a large stock of bags, of the admitted value of $100,000, owned by the plaintiff and situated in the mill of the Oswego Milling Company in Oswego, New York.   The fundamental question is, whether there was sufficient evidence to warrant the jury in finding that there were oral contracts of insurance, or to insure, binding on the defendants.   The defendants concede that, if such contracts were made, they received due notices and proofs of loss; that demands had been made upon them, and that payment had been refused. It is beyond controversy that, if made, the contracts were entered into on July 18, 1918, through Edward H. Daggett, an insurance broker acting on behalf of the plaintiff, and Elston F. Wiltse, claimed by the plaintiff to have authority to bind the defendants. The property was destroyed by fire shortly after midnight, on July 20, 1918.

Daggett testified that, after a preliminary interview at Wiltse's office where the subject of the insurance was discussed, and after securing in behalf of the plaintiff nearly all of the insurance which it desired, he had a telephone conversation with Wiltse in which he told Wiltse that he still desired to place $12,500 of the insurance concerning which he had spoken to him in the morning; that Wiltse "gave me then the — said he would take $7,500, in the Agricultural and $5,000, in the Equitable Fire and Marine;" that he "asked Mr. Wiltse if there was any question about the insurance being binding, and Mr. Wiltse said no . . . and asked whether he should use a . . . form which he had, and I said that I would prefer to have the form sent to him from New York so that all policies would be the same; and asked him to confirm the fact that he was binding this insurance, this $12,500, in these two companies, and he said that he would do so; . . . that the premium on . . . [the] $7,500 policy would be $174.90, . . . and that the premium on a $5,000 policy was $116.60."   Continuing his testimony as to this conversation, Daggett further said: "I told Mr. Wiltse that I had . . . this $12,500 insurance left and asked him what companies he could give it to me in, but told him I did n't want it in the National of Hartford because it

would n't stick, and he gave me the Agricultural and the Equitable;" that he asked Wiltse to confirm the insurance in writing but that he never got any such confirmation; that "he was absolutely positive that he asked Mr. Wiltse during the telephone conversation . . . whether the lines were binding." In the course of his cross-examination the following question and answer occurred: "Q. And he gave you that in response to an inquiry made by you as to what companies he thought would take the line? A. He gave me that in response to my request for this $12,500 coverage, not what he thought it would."

In explaining without objection the meaning of the word "form" used by him, Daggett said in substance that a form was a slip of paper, designed to be attached to the policy, containing the description and the location of the property to be covered by the policy with clauses as to special risks, co-insurance and the maintenance of a sprinkler equipment; and that he told Wiltse that he would prefer to have the form to be used in the contract sent from New York to be copied from the forms on the policies which were in force, so that they would be like those on others covering the same property.

Wiltse, called as a witness by the defendants, testified that "he was in the fire insurance business at Oswego." He admitted having a conversation with Daggett relative to the insurance of the plaintiff's property but absolutely denied that he had made the statements to which Daggett testified. His version of what had happened was that negotiations had taken place as to this insurance but that nothing had finally been consummated, and that at the close of the conversation he said to Daggett, "Well, send on your forms and I will see."

He testified concerning his authority to bind the defendants, that when he was appointed agent he received written certificates of authority (introduced in evidence), by the terms of which he was constituted the agent of each defendant, "with full power to receive proposals for insurance against loss by fire" in Oswego; that the certificate of the Agricultural Insurance Company further authorized him to "countersign, issue and make endorsements upon policies of insurance signed by the President and attested by the Secretary of said Company, to collect premiums, and consent to Assignments of Policies, and to attend to the

business of his Agency in accordance with the rules and regulations of said Company, and such instructions as may be given by its officers;" and that of the Equitable Fire and Marine Insurance Company authorized him to "fix rates of premium upon such Insurance, receive moneys, to countersign, issue, renew and consent to the transfer of Policies of Insurance, signed by the President, and attested by the Secretary of the said Company, subject to the Rules and Regulations of said Company, and to such instructions as may, from time to time be given by its officers." It further appeared that Wiltse was furnished by both companies with blank policies which he was authorized to countersign and issue in accordance with the terms of his commission. He also testified that the Agricultural Insurance Company had given him instructions not to insure flour or grist mills, and that this prohibition included the contents as well as the buildings.

Under Rule 38 of the Superior Court (1915), the Agricultural Insurance Company admitted that the "law of the State of New York is that if and when a binding verbal contract of fire insurance is made, it embraces within it the provisions of the standard policy of fire insurance prescribed by the New York Legislature;" and the Equitable Fire and Marine Insurance Company admitted that "If by reason of any conversation which Mr. Wiltse may have had with Mr. Daggett on July 18, 1918, it could be properly found that the defendant then and there entered into a contract of insurance with the plaintiff, no doubt the New York standard form of fire insurance policy constituted a part of that contract." A copy of the form of said standard policy was in evidence, and the record states that "at the time of this loss [it] was the only form of fire insurance policy which could be lawfully issued" in that State. *Hicks* v. *British American Assurance Co.* 162 N. Y. 284.

The law as to oral contracts relating to insurance against fire is well settled and need not again be fully stated. Oral contracts of insurance, and to insure temporarily, against fire are valid apart from some statutory prohibition. *McQuaid* v. *Ætna Ins. Co.* 226 Mass. 281, and cases collected on page 283. The alleged contracts were made in New York. Since there is no evidence as to the law of that State, the presumption is that it is the same as our own, *Callender, McAuslan & Troup Co.* v. *Flint,* 187 Mass.

104. *Cavanaugh* v. *D. W. Ranlet Co.* 229 Mass. 366. An agent empowered to countersign and issue policies may, as incidental to his authority, make oral contracts for temporary protection of the owner in case of fire. Unless the person insured has some notice of limitation on the authority of the agent, he may rely upon an implied authority in such an agent to make such contract. In the case at bar, the evidence of the authority was sufficient to authorize the agreement for temporary insurance, which, as hereinafter decided, the jury could have found to have been made. *Putnam* v. *Home Ins. Co.* 123 Mass. 324. *Baker* v. *Commercial Union Assurance Co.* 162 Mass. 358. *Scammell* v. *China Mutual Ins. Co.* 164 Mass. 341. *Sanford* v. *Orient Ins. Co.* 174 Mass. 416. *McQuaid* v. *Ætna Ins. Co. supra. Angell* v. *Hartford Fire Ins. Co.* 59 N. Y. 171.

The jury could have found that Wiltse, purporting to act in behalf of the defendants, entered into oral contracts with the plaintiff through its duly authorized representative to indemnify the plaintiff from loss or injury by fire to its property in the mill, pending the issuance of a written policy. While the agent did not agree by direct provision that the plaintiff should be protected, the amount of the insurance, the premiums payable and the property insured were definitely settled. The evidence justified a finding that it was definitely and fully arranged that the policies were to be issued when the "forms" referred to had been sent to the defendants' agent. Although the words "You are covered" were not used, from the evidence that the insurance was then binding, that the plaintiff's agent required coverage, from the request and agreement for confirmation, and the connection in which the words were used, it could have been found that contracts then were made that the property should be protected against loss by fire, at least for a reasonable time within which policies should be issued. Such contracts, covering the time that almost necessarily elapses between the placing of insurance and the issuance of a policy, are valid. *Putnam* v. *Home Ins. Co. supra. Baker* v. *Commercial Union Assurance Co. supra. Scammell* v. *China Mutual Ins. Co. supra. McQuaid* v. *Ætna Ins. Co. supra. Mowles* v. *Boston Ins. Co.* 226 Mass. 426. Such a contract may be made, although further information is necessary before the formal policy can be issued. *Putnam* v. *Home Ins. Co. supra.*

*Scammell* v. *China Mutual Ins. Co. supra.* *McQuaid* v. *Ætna Ins. Co. supra.*

The right of the plaintiff to recover upon the pleadings and evidence must next be considered. Admittedly all the counts are for the same causes of action. The actions are not maintainable under counts one and two. The allegations of the first count in each declaration, so far as material, are that each defendant agreed to issue its policy for one year and failed so to do; and that, the property which was to be insured having been destroyed by fire, it is liable because it did not perform the contract. The evidence at the most tended to prove that there was an agreement to issue a policy when certain terms thereof had been settled and the form hereinbefore described had been submitted in behalf of the plaintiff so that all of its policies should read alike. It clearly was contemplated that there should be no policy of insurance for a definite term until that had been done. This form never was delivered to the defendant or its agents. Until so given, the policy could not be issued and hence there was no default at the time of the fire.

The material averments of the second counts in each declaration set forth an agreement to issue a policy in the standard form prescribed by the State of New York for a like period; to keep the property insured in the interval prior to the issuance of the policy; and that the defendant did not issue the policy nor insure the property in accordance with its contracts. This count is based upon an agreement to insure for a definite time and an agreement to keep the property insured in the meantime, and is not supported by evidence of actual insurance. For reasons already stated, there was no breach of a contract to issue a policy; and the evidence did not tend to prove an oral contract to insure, as distinguished from a contract of insurance, in the interval before a policy was delivered.

The third counts are upon contracts to insure for the term of one year. The evidence was not of an engagement to insure for that time, but related to an agreement "covering" the property from loss pending the issuance of a formal policy; hence there was a material variance between the obligation set forth in this count and the evidence. *Baker* v. *Commercial Union Assurance Co.* 162 Mass. 358, 372. *Equitable Accident Ins. Co.* v. *Osborn*, 90 Ala. 201.

As a result, although upon the evidence the plaintiff was en-

titled to go to the jury, — upon the pleadings and evidence, the rulings directing verdicts for the defendants were correct. The pleadings by reference are made a part of the report; the defendants argue that there was variance between the allegations and the evidence. It is well settled that where the ruling of a judge is apparently made with reference to the pleadings, it cannot be reversed if correct in the light of the allegations of the declaration. *Granara* v. *Jacobs,* 212 Mass. 271. *Cesana* v. *Johnson,* 232 Mass. 444.

A careful examination of the record raises serious uncertainty as to whether the direction of a verdict was in fact made with reference to the pleadings. The conclusion of the report is as follows: "At the conclusion of the evidence, I directed the jury to return verdicts for both defendants and by agreement of counsel I hereby report both cases to the Supreme Judicial Court for the Commonwealth for determination, with the stipulation that if my order directing the verdicts was error, judgment[s] shall be ordered for the plaintiff for the amounts indicated and agreed upon; otherwise judgment[s] to be ordered for the defendants." This part of the report makes no reference to the pleadings, and nothing appears therein to indicate beyond danger of controversy that any question relating thereto was raised. If such a contention had been made, the objection presumably would have been cured by amendment. Whatever remedy there may be properly can be given in the Superior Court.

After rescripts and before the entry of judgments, the report and the stipulation contained therein may be discharged and leave given to amend the declarations, if the interest of substantial justice is found to require such action.

The rescripts should provide for judgments for the defendants, unless within thirty days from the entry of the rescripts, on motions of the plaintiff heard by the judge who tried the cases, the plaintiff is allowed to amend the declarations by inserting one or more new counts to raise the issue on which it is now held that there was a question of fact, and unless the report and stipulation of the parties contained therein be discharged within that time. In case said amendments shall be allowed, and said report and stipulation discharged, there must be a new trial, as the case came here upon report and without any finding by the jury upon

the controverted facts. *West* v. *Platt,* 124 Mass. 353. *Terry* v. *Brightman,* 133 Mass. 536. *Gale* v. *Nickerson,* 144 Mass. 415, 417. *Lowd* v. *Brigham,* 154 Mass. 107, 111. *Stone* v. *St. Louis Stamping Co.* 156 Mass. 598. *Frost* v. *Courtis,* 172 Mass. 401. *Garden Cemetery Corp.* v. *Baker,* 218 Mass. 339. *Cesana* v. *Johnson, supra.*

<div align="right">

*So ordered.*