JOSEPH H. BAKER & others *vs.* COMMERCIAL UNION ASSURANCE COMPANY.

SAME *vs.* WESTCHESTER FIRE INSURANCE COMPANY.

Essex.    November 7, 1894. — November 27, 1894.

Present: FIELD, C. J., ALLEN, KNOWLTON, & BARKER, JJ.

*Fire Insurance — Oral Contract to continue Policy in Force — Exceptions — Variance — Action — Instructions — Principal and Agent — Non-payment of Premium by Assured — Validity of Contract.*

In actions upon an alleged oral contract of insurance, it appeared that the plaintiff held a policy of insurance against loss by fire on his property in each of the defendant companies, which expired on a certain Sunday; that A., an insurance agent, was the plaintiff's agent in procuring all his insurance; that B. was the

defendants' local agent; and that C. was a clerk in the employ of A., who died before the trial. C. testified that on Saturday B. came into A.'s office and said, "How about those policies which will expire to-morrow of" the plaintiff? to which A. replied, "Hold them, I want to see" the plaintiff "before they are written up, I think there will be some change in the form"; that B. said, "All right"; that on the next Monday B. called in A.'s office and said, "How about those policies which I held over Sunday, the" plaintiff's "policies"? to which A. replied, "I have not seen" the plaintiff "yet, I would like to have you hold them until I can see him"; and that B. said that he would. B. testified that on Saturday A. asked him to hold the policies over Sunday until he could see the plaintiff; that on that day B. wrote in his "expiration" book, opposite the two policies, the word "Hold"; and that on Monday A. told him that he had not seen the plaintiff, and did not think he would want the policies, and told him, in so many words, not to renew the policies. Expert testimony was introduced which tended to show that the meaning of the term "Hold" was to keep the policy in force for a reasonable time under the circumstances of the case. Nothing further was said or done as to the renewal of the policies; and on the following Friday the property was destroyed by fire. *Held,* that there was evidence to warrant a verdict for the plaintiff.

If the declaration in an action contains four counts, and an exception is taken to the refusal of the judge to rule, as requested by the defendant, "that there was no evidence which would warrant the jury in finding a verdict for the plaintiff on the first, second, third, or fourth counts of the declaration, respectively," and the request, as applied to either count, embodies a correct proposition of law, and the defendant was prejudiced by the failure to give it in terms, the exception must be sustained.

A declaration, describing the contract relied on as an agreement to insure the plaintiff's property against loss by fire for one year from a certain day, which was the date of the expiration of a policy of insurance for one year thereon in the defendant company, is not sustained by proof of an arrangement between the respective agents of the parties, by which the defendant's agent agreed to hold the policy in force until the plaintiff's agent could see the plaintiff and ascertain on what terms he wished to take a new policy, and until one of the parties should terminate the arrangement, or until the arrangement should end by the expiration of a reasonable time.

If the agent of A. and the agent of an insurance company in which A. holds a policy of insurance against loss by fire on his property which is about to expire, enter into an arrangement by which the insurer's agent agrees to hold the policy in force until A.'s agent can see A. and ascertain on what terms he wishes to take a new policy, and until one of the parties shall terminate the arrangement, or until the arrangement shall end by the expiration of a reasonable time, and the property is destroyed by fire within five days, during which nothing further has been said or done as to the renewal of the policy, an action may be maintained by A. against the insurance company to recover for his loss.

The declaration in an action upon a contract of insurance contained five counts, the first and third of which alleged respectively that the defendant agreed to insure the plaintiff's property against loss by fire for one year from a day named, and to issue to the plaintiff, in due course, a policy of insurance in accordance with the contract; and that the defendant insured the plaintiff's property for one year from a day named. The other counts alleged respectively that the defendant agreed to insure the property from a day named until the

agreement should be superseded by another agreement, or until a policy should be issued; that the agreement for insurance should continue in force from a day named, until terminated by notice from one party to the other; and that the agreement should remain in force from a day named, for a reasonable time. At the trial, the only contract relied on was an oral one made by the respective agents of the parties. The defendant requested the judge to rule " that there was no evidence which would warrant the jury in finding a verdict for the plaintiff on the first, second, third, or fourth counts of the declaration, respectively." The judge refused so to rule, and gave full instructions to the jury in regard to the rights and powers of insurance agents to make oral contracts of insurance ; and, while he did not in express words say that the jury could not find such a contract as was alleged in the first or third counts of the declaration, the whole tenor of his charge was such that the jury must have understood that they could not find any other valid contract than a temporary contract incidental to the issuing of a policy. *Held*, that the defendant was not injured by the refusal to give in terms the instructions requested.

The agent of an insurance company has authority to make an oral contract of insurance against loss by fire, which will bind the company until a policy can be issued.

An oral contract of insurance against loss by fire, made by the agent of an insurance company until a policy can be issued by the company, is valid when there is no payment or tender of payment of the premium, if the agent chooses to give the insured credit.

If the agent of A. and the agent of an insurance company in which A. holds a policy of insurance against loss by fire on his property, which is about to expire, enter into an arrangement by which the insurer's agent agrees to hold the policy in force temporarily for an indefinite period until there shall be some further communication between them in regard to the matter, it being understood that A.'s agent is to see A. in the mean time, the policy will remain in force, in the absence of any notice by either party to the other, even if the time that was reasonably necessary to enable A.'s agent to see him has elapsed.

Two ACTIONS OF CONTRACT. The declaration was the same in each case, and, as amended, contained five counts. The first count alleged that on March 19, 1892, the defendant, by its agent, agreed with the plaintiffs to insure for a period of one year from March 20, 1892, certain property of the plaintiffs, upon the same terms and conditions as were contained in a policy of insurance in the sum of $2,500, issued by the defendant against loss by fire on the same property, and which expired on that day, and to issue to the plaintiffs, in due course, a policy of insurance in accordance with said contract. The second count alleged that the defendant agreed with the plaintiffs to insure the property upon the same terms set forth in the expiring policy of insurance from March 20, 1892, until said agreement should be superseded by another agreement, or until a policy should be issued by the defendant to the plaintiffs. The third

count alleged that on March 20, 1892, the defendant insured the plaintiffs' property for the period of one year from that day. The fourth count alleged that on March 19, 1892, the defendant insured the plaintiffs' property, and it was agreed that said agreement should continue in force from March 20, 1892, until terminated by notice from one party to the other. The fifth count alleged that on March 19, 1892, the defendant insured the plaintiffs' property, and it was agreed that· this contract should remain in force from March 20, 1892, for a reasonable time.

The cases were tried together in the Superior Court, before *Richardson*, J., who allowed a bill of exceptions, in substance as follows.

The plaintiffs, who were copartners, were manufacturers of shoes, doing business in Springfield under the name of the Springfield Shoe Company. The business was conducted by the plaintiff Charles H. Baker, who lived in Springfield, the other plaintiffs living elsewhere. Charles H. Baker is the Baker referred to in the testimony.

There were no direct dealings between the plaintiffs and any officer of the defendant corporations, and the plaintiffs' claim was based upon the dealings between Fred. A. Judd, who, for all purposes material to these causes, was admitted by the defendants to be the plaintiffs' agent, and Thomas R. Weaver, a member of the firm of Ladd Brothers and Company, whose relation to the defendants hereinafter appears.

Judd and Ladd Brothers and Company were each insurance agents, and their respective offices were in the same building in Springfield. Judd had charge of writing or procuring all the plaintiffs' insurance. It had been the practice for several years between Judd and Ladd Brothers and Company, that, where either had insurance to be written which for any reason was not written by the companies represented by him or them, to cause it to be written by the other in companies represented by him or them. In such cases, it did not appear whether the premium was paid by the insured or by the agent procuring the insurance, or whether credit was given for the premium or it was paid in cash.

Judd had procured Ladd Brothers and Company to write two policies of insurance, in the Massachusetts standard form, on the

plaintiffs' stock, for the amount of $2,500 each, one in each of the defendant companies. These policies expired on March 20, 1892, which was Sunday. Charles H. Baker testified that, at an interview with Judd three or four weeks before the expiration of these policies, he told Judd that he wished the policies renewed, but that perhaps he might wish the form changed so as to cover not only stock, but also machinery and fixtures, as did all his other policies. The defendants admitted that the plaintiffs had at the time of the fire more stock in their factory than the amount of their insurance upon stock ; that they intended to renew the two expiring policies, and had done everything that could be expected of them in the way of instructing their agent, Judd, to renew the policies.

Judd died after the beginning of these actions, and before the trial, and the only witnesses who testified to the making of the alleged oral contract of insurance were Nelson R. Hosley, a man of seventeen years' experience in the insurance business, who was at the time, and had been since February, 1880, Judd's clerk, and Thomas R. Weaver, above referred to. Both were called as witnesses by the plaintiffs.

Hosley testified substantially as follows: " In the latter part of the day, on Saturday, March 19, as near as I can remember, Mr. Weaver called at the office and asked about the policies of Baker and Company, which were expiring the next day. Mr. Judd and I were both in the office at the time, and he (Weaver) stepped up and said, ' How about those policies which will expire to-morrow of J. H. Baker? ' I stood at the desk facing the door and Mr. Judd stood at another desk with his back towards the door, and I spoke up and said, ' They want to be held,' or ' Hold them.' Mr. Judd turned round and says he, ' Yes, hold them, I want to see Mr. Baker before they are written up ; I think there will be some change in the form, these policies covering all on stock and the balance of the policies covering on machinery, office furniture, and stock. I don't know but that they are to be written as the other policies were.' Mr. Weaver says, ' All right.' On the next Monday, about three o'clock in the afternoon, Weaver called in the office and says, ' How about those policies which I held over Sunday, the Baker policies? ' Judd says, ' I have not seen Mr. Baker yet, I would like to have you

hold them until I can see him.'   Mr. Weaver replied that
he would."

On cross-examination, Hosley testified that he understood that
the policies were held over Sunday; and that he would not swear
whether, in the conversation on Monday, Weaver used the
words " over Sunday" or not, but that he did not use them in
the previous conversation on Saturday.

Weaver testified substantially as follows: " On Saturday,
March 19, I went into Mr. Judd's office, carrying some other
policies which I had renewed for him, and asked him, ' What
about the Baker policies? you gave us the forms for Mr. Mack-
intosh, but you have not for Mr. Baker'; and he said that
these policies were special policies that covered on stock, and
he did n't think they would want to be renewed, but asked
me to hold them over Sunday and he would see Mr. Baker and
let me know.   In the course of the conversation, Judd said
he did n't know whether they wanted them or not.   He asked
me to hold them over Sunday till he could see Mr. Baker.   I
went back to my office and wrote in pencil on the expiration
book, opposite the two policies which were to expire, the word
' Hold.'   (The expiration book, which was in evidence, was a
book kept by Ladd Brothers and Company, showing the date
of the expiration of their policies.)   I went to see Mr. Judd
on Monday about one o'clock.   That was the only time I saw
him on that day.   I had only one conversation with him on
Monday.   As I was about to go to dinner, I stepped into his
office and asked him if he wished those policies renewed.   I
referred to these policies, and he said that he did n't think they
would be renewed, because he thought that Mr. Baker had
reduced his stock and would not require the policies, but that if
he wanted the insurance he would let me know.   I went out of
his office to dinner then, and that is the last I heard of it until
after the fire.   I did n't say anything in reply to that.   I did
not understand at that time that Judd intended for me to hold
these policies just as I had held them for a day or two before.
That was not the impression that was left on my mind at that
time.   Mr. Hosley was not there.   I did not have any conversa-
tion with Mr. Hosley, or in his presence with Mr. Judd, in rela-
tion to these policies at any time on Monday.   I was not in the

office at three o'clock that afternoon, and don't remember seeing Mr. Hosley that day. I wrote the word 'Hold' there to cover those two policies, and I wrote it Saturday night. It has never been erased. The book is only to show the expiration of policies and as a convenience to show how the policies are disposed of. I did not go back from Mr. Judd's office that day when I understood that this policy was not to be renewed and erase the word 'Hold,' because I did n't do it in any case. Mr. Judd told me Monday that he had not seen Mr. Baker since Saturday, and he said he was reducing his stock and he did not think that he would want the policies, and said it in a way that I did not promise to hold it any longer. He was about to go to his dinner, and he lived but a short distance from Mr. Baker's shop, and the impression that he gave me was that he would go to see Mr. Baker. He said in so many words not to renew the policies. I asked him if I should renew those policies, and he said, 'No.' "

No further talk with reference to the alleged oral contracts of insurance occurred, and no act was done with respect thereto.

On the morning of Friday, March 25, 1892, the plaintiffs' factory and the stock and machinery therein were burned. The plaintiffs made due proof of loss; and it was admitted at the trial that, if the plaintiffs were entitled to recover at all, they were entitled to recover the full amount claimed.

There was no evidence that the plaintiffs, or any one in their behalf, ever paid or tendered any premiums in respect of the alleged contracts of insurance to either of the defendants, or any one representing them, or that any credit was expressly or impliedly given therefor, except as herein stated. The defendants never demanded the premiums. Charles H. Baker testified that it was Judd's custom to bring his policies to him at his convenience, and that he never paid for them until Judd brought them.

The plaintiffs' factory was about a mile and a half or three quarters from Judd's place of business. Both were connected by telephones which were working as the majority of telephones were then working in Springfield. Judd lived about a mile and three quarters from his office, and was accustomed to go to and from his home by street railway cars or his own private team. Baker lived in Springfield, about half a mile away from Judd,

and there were social relations between them in addition to their business relations.

Baker and Judd did not meet between the time of the expiration of the policies and the day of the fire, but Baker was in Springfield during that interval, and was at his place of business daily. Judd was in Springfield during the interval, and at his place of business daily, but at the time was not in good health. There were two clerks, one man and one woman, in Judd's office.

In respect to the extent of the authority of Weaver to act for the defendants, it was admitted that the firm of Ladd Brothers and Company were the agents of each of the defendants for the purpose of issuing written policies of insurance. In addition to that admission, Weaver testified substantially as follows: " We have been many years in the insurance business. It is our sole business. We have been agents for the Commercial Union for fifteen or twenty years, and for the Westchester three or four years. Our appointment is in writing. We in fact issued all the policies from the defendant companies in Springfield and vicinity, and they are all countersigned by us as agents. I supposed that I had a right to write the word ' Hold,' and bind the company over Sunday. This has been our habit with respect to these companies all the time since we have been their agents. I can't say whether the companies knew of it. Mr. Brush, who is the general agent of the Commercial Union, knew we were holding policies in that way say for half a day, and that the effect of that was to continue the insurance for that time. There has never been anything said about it between us. When we mark the policies ' Hold,' it is either to go over Sunday or a holiday, where we cannot see the party. I presume there have been cases where we mark them ' Hold ' where it was not Sundays or holidays. As a rule, the time is limited that we hold it."

Hosley testified that there had been dealings between the two offices all the time while he had been with Judd; and he had never heard of any limitation of Ladd Brothers and Company's power as agents of any of the companies they represented.

The plaintiffs' policies which expired March 20, 1892, were introduced in evidence. The following is an extract from each policy in suit: " This policy shall not be valid unless counter-

signed by the duly authorized agent of the company at Spring-
field, Mass. . . . Countersigned this 20th day of March, 1891.
Ladd Bros. & Co., Agents."

The plaintiffs were permitted to offer the testimony of Hosley
and of two persons experienced in the business of insurance
with respect to the custom among insurance agents as to hold-
ing insurance binding. Upon that subject Hosley testified that,
as to the renewal of old policies, it was customary in Springfield
to give the agent notice to hold the policy expiring, that is, to
hold the policy in force subject to receiving a notice of renewal
until he received a notice to either drop or to renew or write up
the policy; that the meaning of the term "Hold" was to keep
the policy in force; that the insurance was supposed to continue
until the agent received a notice to drop or to renew it, no matter
how long; that it was not wholly intended to meet an emergency
over a Sunday or a holiday where the parties could not meet,
but until the agent could see the assured; that it was customary
to hold until notice, or until either he was able to see his prin-
cipal or his principal was able when he saw him to decide what
he would have; and that he had known of cases where insurance
was held for a week, and even for a month.

Horace V. Freeman, who had been engaged in the insurance
business for twenty-five years and was thoroughly familiar with
insurance matters, testified that there was a usage or custom
among insurance agents to "hold" policies, which meant to
hold the insurance binding until a notice was given that it was
to be discontinued within a reasonable time, and that it applied
to new insurance and renewals, and referred to the company in
which the insurance expired.

Upon cross-examination, he testified that the usage of holding
was a temporary expedient until the policy could be written;
that the time within which, under the usage, a policy could be
held was limited by its reasonableness under the special circum-
stances of each case; that, apart from the circumstances, there
was no usage as to what a reasonable time was; and that there
were such things as written vouchers, so called, in customary
use, which were used where the risk was to be continued any
length of time, two or three weeks, but were not always used
even then.

William A. Cone, who had been engaged in the insurance business in Springfield about twenty-four years and was the representative there of nineteen companies, testified that there was a custom to hold insurance binding at the request of the assured, or a broker, in emergency cases; that such an arrangement was not confined to Sundays and holidays; that if a policy was marked " Hold," the duration of it would be a reasonable time under the circumstances; that if a policy was marked " Hold," and neither party took any further steps in regard to it for two or three or four days, he should say that the company would be holden; and that, under the custom of transacting business, that would not be an unusual time for a policy to be held.

On cross-examination, he testified that if a policy expired on Sunday, and was marked "Hold " and nothing more, whether it meant that a reasonable time was to hold it until the Sunday had passed by depended upon the understanding had with the assured.

Upon re-direct examination, he testified that, if there was an understanding as to holding insurance, " it is a custom to hold it until the parties meet again and speak about it," if within a day or two, or a week.

At the close of the evidence, the defendants requested the following instructions to the jury:

" 1. Upon all the evidence, the plaintiffs are not entitled to recover.

" 2. There is a variance between the evidence and each and every count of the declaration, and the plaintiffs are not entitled to recover thereon.

" 3. There is no evidence which would warrant the jury in finding that Ladd Brothers and Company had authority to make for the defendants, as its agent, the contract of insurance alleged in either count of the declaration, or testified to by the witness Hosley, or relied upon by the plaintiffs.

" 4. Without payment in some form, or offer or tender of payment to the defendants, or their agent, of the consideration for the alleged promise and agreement of the defendants, this action cannot be maintained, and the verdict must be for the defendants.

" 5. If the jury find that the contract made between the plain-

tiffs and defendants, acting respectively through Judd and Weaver, was that the policies should be "held," that is, that the insurance expressed in the policies should be continued in force until Judd could see the plaintiff Charles H. Baker, and ascertain his wishes, in such case the insurance continued in force, not until Judd in fact saw Baker, but only for such reasonable time as would afford Judd a reasonable opportunity to see Baker, ascertain his wishes, and communicate them to Weaver; and in determining what such reasonable time was, they had the right to consider where he lived, the conveniences or inconveniences of communication, and all other facts.

"6. As matter of law, upon the facts disclosed in the testimony for the plaintiffs with respect to the places of business of Judd and Baker, the place of their respective residences, the telephonic communication between their places of business, Judd's habit of driving to and from his office, and the clerks in Judd's office, the reasonable time given Judd in which to see Baker had expired before the time of the loss, and the insurance was not then in force."

The judge refused to give the first four instructions requested, gave the fifth, and refused to give the sixth; and to the refusals to rule as requested the defendants excepted.

At the time these requests and refusals were made, the declaration consisted of three counts only; but as the jury were about to receive the instructions of the judge, the plaintiffs amended by adding to their declaration the fourth and fifth counts. Thereupon the defendants renewed their requests for instructions; and, the judge declining to give them, except as above stated or herein given, the defendants excepted. The defendants then, in addition, requested the judge to rule that there was no evidence which would warrant the jury in finding a verdict for the plaintiffs on the first, second, third, or fourth counts of the declaration, respectively. The judge refused so to rule; and the defendants excepted.

The judge, among other things, instructed the jury as follows:

"You are to look at the parties and their situation, what they knew about each other, whether there had been dealings before, and whether the plaintiffs in the cases had had credit with these companies before, because if they had, if the insurance companies

had trusted the plaintiffs before, or if they had let the question of premium remain until after the policies had run, or until after they had expired, you would naturally infer that there was something of the sort if nothing was said about it.  So that, while the question of premium is an element in the case, it is not necessary that it should have been expressly agreed upon, in order that you should find that there was a contract or agreement for insurance, because from the circumstances you might find that credit was given. . . .

"It is said, in the first place, that a contract was made on the 19th.  What was it if it was made?  Was it an agreement that they should hold this property insured for Sunday only?  If it was, if that was all that was done on Saturday, then unless something more was done on Monday, evidently that contract (made on Saturday, if it was limited to Sunday) would not avail the plaintiffs here, because the fire occurred four or five days after. . . .

"Now I have stated to you that there may be, so far as I know, a valid oral contract of insurance for a long period.  But when you come to deal with an agent I think that I ought to state to you that, in the case of an agent acting for or representing insurance companies, unless some express authority is given which shows some further power or authority, unless some direction is given beyond what the mere fact of acting as agent implies or carries with it, an agent has only the power to make valid oral contracts of insurance for some temporary purpose incidental to the issuing of policies for long periods of time. That may have some bearing upon the question of what this contract was, whether it was an indefinite period, or whether it was a definite one ; whether it was until Mr. Judd could see Mr. Baker, or whether it was for only over Sunday, or what it was ; because in determining whether a certain contract is made, it is proper for the jury to look into all the facts and the circumstances, and the rights and the powers of all the parties who participate in the transaction.

"Some of the witnesses in this case have instanced two cases in which valid oral contracts are made, as they speak of them, cases of emergency.  Those refer to Sundays and holidays.  I do not understand that they intended to say, and I think they could

hardly say, that those are the only cases in which such temporary valid oral contracts of insurance might be made.

" If you come to the conclusion that a contract of insurance was made until Mr. Judd could see Mr. Baker, the question, it seems to me, appears to be whether or not a reasonable time had expired for that before this fire occurred. Because, if there was an agreement to hold valid insurance upon the plaintiffs' property until something could be done, and no time was mentioned, then it would not be fair to say that that insurance meant for a year or anything like it, unless, indeed, it was some occurrence that would require that length of time. Where a party agrees to do a thing and no time is mentioned, then the law gives him a reasonable time. So that if the agreement between the representatives of these defendant companies and Mr. Judd was that they would hold insurance for a reasonable time for Mr. Baker to be consulted, or to determine some question about it, then you come to the question, which in that case would be a very important one, whether or not a reasonable time had expired. If it had, and Mr. Baker or his agent, Mr. Judd, by their default or by his default, or by his neglect, had omitted to do what they ought to do within a reasonable time, and any loss occurred, then it is due to the neglect or default of Mr. Judd or of the plaintiffs, and that loss cannot be visited upon the defendants.

" So that the questions in this case generally, I think, come down to this: Was there an agreement, valid oral agreement, for insurance here? what were the terms of it agreed upon? or if one of the terms was not agreed upon, to wit, the length of time for which they should hold it, — was left for something to be done, and that was not agreed upon, — was that thing done within a reasonable time? . . . If the contract was that the defendants were to hold insurance on the plaintiffs' property valid and good until notice was given by one side to the other, — that the risk was to stand no longer, — then it should stand until notice was given by one side to the other.

" The real question is whether, upon all the facts and circumstances in the cases, these defendant companies had a risk on the plaintiffs' property on the morning of the 25th of March, when the fire destroyed it; and to that all these other questions

are subsidiary, and all the evidence in the cases has any importance only as it bears upon that ultimate question in the case.

" If the jury find that the contract made between the plaintiffs and the defendants, acting respectively through Judd and Weaver, was that the policies should be held, that is, that the insurance expressed in the policies should be continued in force until Judd could see the plaintiff Charles H. Baker, and ascertain his wishes, in such case the insurance continued in force, not until Judd in fact saw Baker, but only for such reasonable time as would afford Judd a reasonable opportunity to see him and ascertain his wishes, and communicate with Weaver.

" In determining, I will add, what such reasonable time was, you have a right to consider where they lived, what the means of communication were between them, and all other facts and circumstances in the case. That I think renders unnecessary two or three other requests which have been made in that respect."

There were no exceptions to the charge.

The jury returned a general verdict for the plaintiffs in each case; and the defendants alleged exceptions.

*W. H. Moody*, for the defendants.

*H. P. Moulton & R. W. Boyden*, for the plaintiffs.

KNOWLTON, J. The only exception in these cases is to the refusal of the presiding justice to give the jury certain instructions requested by the defendants. No exception was taken to the instructions given.

1. There was evidence to warrant the jury in finding verdicts for the plaintiffs. The jury might well find that the agent of the defendants, when the policies of insurance were about to expire, agreed with the agent of the plaintiffs to hold the policies in force as valid contracts of insurance on the terms stated in them for an additional time for the purpose of enabling the plaintiffs' agent to ascertain on what terms they wished to take policies in writing, and until one of the parties should terminate the temporary arrangement; or, under another possible construction of the contract, until the arrangement should end by the expiration of the reasonable time which was agreed to be allowed for that purpose, and that while the policies were so held in force the property insured was burned.

2. It is conceded by the defendants that, after the allowance of the amendments to the declaration, the jury could not properly have been instructed that there was a variance between the evidence and each and every count of the declaration. A request was then made for a ruling " that there was no evidence which would warrant the jury in finding a verdict for the plaintiffs on the first, second, third, or fourth counts of the declaration respectively." We understand this to have been a request in regard to each count considered by itself alone. If, as applied to either count, it embodied a correct proposition of law, and if the defendants were prejudiced by the failure to give it in terms, the exceptions must be sustained.

The first and third counts describe the contract relied on as an agreement to insure the property for one year from March 20, 1892. We are of opinion that the arrangement between the agent of the plaintiffs and the agent of the defendants, in regard to which the testimony was somewhat contradictory, cannot be interpreted as a contract to insure property for one year, either on the terms stated in the policies of insurance which expired about that time, or on any other terms. It was understood by both parties as a temporary arrangement incidental to a contemplated contract in writing soon to be made, or to future negotiations for such a contract. We are of opinion that there was evidence which would have warranted the jury in finding for the plaintiffs on either the second, fourth, or fifth counts. The testimony gave the jury a great deal of latitude in determining what the contract was. There was quite a variety of statement in regard to what occurred between the agents of the parties, and there was testimony from numerous witnesses who were not in entire accord in regard to the usage of insurance agents when asked to hold a policy which is about to expire. Assuming, as we must from their verdict, that the jury believed the testimony which was favorable to the plaintiffs, it seems probable, in view of the relations existing between the two agents and the proximity of their offices in the same building, that the agreement was found to be as stated in the fourth count of the declaration, that the insurance should be continued in force " until terminated by notice from one party to the other," it being understood that the arrangement was only temporary. No demurrer

was filed, and no objection was taken to the form or sufficiency of the allegations in either count of the declaration.

In regard to the first and third counts, the defendants were right in their contention. The important question is whether they were injured by the refusal to give in terms the instructions requested. If we were warranted in saying that the jury may have found for the plaintiffs on either of these counts instead of one of the others, we should be constrained to sustain the exceptions. Ordinarily, if there is no evidence to warrant a verdict for the plaintiff on a particular count of a declaration, the defendant has the right to have the jury so instructed if he requests it; but in the present case it sufficiently appears that the jury could not have gone astray on account of the failure to give this instruction in terms. The only contract relied on was oral, and the judge gave the jury very full instructions in regard to the rights and powers of insurance agents to make oral contracts of insurance. He told them that, unless some authority is given beyond what was shown in this case, " an agent has only the power to make valid oral contracts of insurance for some temporary purpose incidental to the issuing of policies for long periods of time." He then referred to cases of emergency — Sundays and holidays — mentioned by some of the witnesses, and said he did not think the witnesses intended to say that those were " the only cases in which such temporary valid oral contracts of insurance might be made." He referred to the different possible views of the arrangement between the parties, and while he did not in express words say that the jury could not find such a contract as is alleged in the first or third counts of the declaration, the whole tenor and purport of the charge were, we think, such that the jury must have understood that they could not find any other valid contract than a temporary contract incidental to the issuing of a policy, and therefore that there could be no finding for the plaintiffs under the first or third counts. We think the defendants were not injured in this part of the case.

3. There was evidence to warrant the jury in finding that the defendants' agent had authority to make an oral contract of insurance such as the plaintiffs relied on. That insurance agents have long been accustomed to make such contracts was

testified to by numerous witnesses, and it is a fact of common knowledge. That such contracts are legal and binding has often been decided by the courts. *Sanborn* v. *Fireman's Ins. Co.* 16 Gray, 448. *Putnam* v. *Home Ins. Co.* 123 Mass. 324.

4. Such a temporary contract is valid when there is no payment or tender of payment of the premium, if the agent chooses to give the insured credit. To give credit in such cases is a common practice of insurance agents, and within the apparent scope of their authority. *Angell* v. *Hartford Ins. Co.* 59 N. Y. 171. *Bouton* v. *American Ins. Co.* 25 Conn. 542.

5. In their sixth request for instructions the defendants asked to have the jury told that the insurance was not in force at the time of the loss because the reasonable time given to Judd in which to see Baker had then expired. This request was founded on an assumption that the only contract which the jury could find on the evidence was a contract to continue the policies in force until Judd could see the plaintiff Charles H. Baker, and ascertain his wishes in regard to the insurance. But this was not the only construction that could be put upon the evidence. We think the jury believed that Judd and Weaver both understood at the time of their interview that the policies should be held in force temporarily for an indefinite period, until there should be some further communication between them in regard to the matter. If that was so, the policies would remain in force, in the absence of any notice by either party to the other, even if the time that was reasonably necessary to enable Judd to ascertain facts had elapsed. *First Baptist Church* v. *Brooklyn Ins. Co.* 19 N. Y. 305.

That the jury might give the contract a construction different from that assumed in the request is enough to justify the judge in his refusal to give the instruction, and we have no occasion to inquire whether the facts were so clear as to make the question what was a reasonable time to enable Judd to see Baker a question of law, or, if this question entered into the verdicts of the jury, whether it was rightly decided by them.

*Exceptions overruled.*