CHARLES H. DRESSER & SON, INC. *vs.* THE ALLEMAN-NIA FIRE INSURANCE COMPANY ET AL., No. 1005.
SAME *vs.* THE CONCORDIA FIRE INSURANCE COMPANY ET AL., No. 1007.
SAME *vs.* THE NORTH RIVER INSURANCE COMPANY ET AL., No. 1012.
SAME *vs.* ROYAL INSURANCE COMPANY (LIMITED) ET AL., No. 1014.
SAME *vs.* UNITED STATES FIRE INSURANCE COMPANY ET AL., No. 1016.

First Judicial District, Hartford, October Term, 1924.
WHEELER, C. J., BEACH, CURTIS, KEELER and KELLOGG, Js.

A fire insurance agent having authority to make contracts of insurance or to issue policies, stands in the place of the company to the insured, and his powers, like those of any other general agent, are ostensibly co-extensive with the business entrusted to his care and will not be narrowed by limitations uncommunicated to the persons with whom he deals.

By the weight of authority, a general fire insurance agent has power to agree orally to such alterations in the conditions of the policy as may, under its terms, be made by written agreement indorsed on or affixed thereto.

But the power of such an agent to bind his company by oral contracts of insurance is limited to temporary arrangements which are merely incidental to the issuance of long-term policies; to enlarge that

Dresser & Son, Inc. *v.* Insurance Companies.

power to include contracts of indefinite duration would be inconsistent with the policy of present-day regulation and supervision of insurance business by the State.

Insurance companies are chargeable with knowledge of contracts made within the actual or ostensible authority of their agents.

In the present cases, the agents of the defendant companies insured a wood-working plant then in bankruptcy (and therefore an undesirable risk) upon the condition that the defendant W, an insurance broker acting for the trustee, would have the same or proportionate policies continued in force, provided he controlled the placing of insurance for any subsequent purchaser from the trustee. Within a few weeks thereafter, the plant was sold by order of court to the plaintiff corporation, the president of which immediately secured from W a written agreement to maintain the existing insurance pending an inventory to determine the desirability of a reduction in amount. Five days later, and prior to the completion of the inventory, the property was wholly destroyed by fire. Although the agents had learned of the sale to the plaintiff before the fire, none of them took steps to cancel the policies, and, after the fire, two of the agents collected full annual premiums; but at no time was the transfer of title to the plaintiff endorsed on the policies, each of which contained the standard provision that it should be voided by change of ownership without such indorsement or a written waiver thereof; nor did it appear that W had followed the custom, recognized by the defendant companies in such situations, of securing the oral consent of the agents to a temporary binding of the insurance. *Held:*

1. That the defendant companies were liable, since the oral agreements between W and the agents respecting the continuation of the insurance after the anticipated sale by the trustee, created valid, conditional contracts to maintain the insurance in force for a reasonably limited time after the sale, in favor of the purchaser, then unknown but later identifiable as the plaintiff.

2. That the plaintiff could maintain the present actions as sole beneficiary of these contracts.

3. That if other companies, not parties to these actions, were not liable upon their policies, the plaintiff could recover from W upon his agreement to keep the property insured; and that the cause of action arising out of that agreement was severable in its nature and could be enforced by making W a codefendant in separate actions against each company.

Argued October 8th—decided December 12th, 1924.

SUITS for the reformation of policies of fire insurance issued by the defendant companies, for orders direct-

ing their delivery thereafter to the plaintiff, and for other equitable relief and damages, brought to the Superior Court in Hartford County and referred to a State Referee, who heard the parties and reported the facts; the court (*Maltbie, J.*) accepted the report, found the issues for the defendants and rendered judgment for them, from which the plaintiff appealed. *No error in No. 1012; error in part in the remaining cases.*

These five cases, with nine others involving similar questions of fact and law, were referred to the *Hon. Joel H. Reed,* State Referee, who filed a single comprehensive report stating the facts as to all the cases, and concluded from the facts found that the respective underwriters, except the North River Insurance Company, were liable to contribute proportionately to the payment of the plaintiff's admitted loss of $33,281.

The Superior Court accepted the report of the referee, but reached a different conclusion from the facts found, and gave judgment in twelve cases for the defendant underwriters and the defendant Woodford. Plaintiff has appealed in each of these cases; and the questions of law presented in the five appeals now before us, include all questions raised in all twelve appeals. These five appeals have been covered by one presentation in briefs and arguments. All the policies cover the same risk, namely, a woodworking plant formerly owned by the Cairns Woodworking Company. Charles E. Lord was appointed by the Superior Court receiver of the plant in February, 1917, and was appointed trustee in bankruptcy by the United States District Court in March, 1917. He held the property as receiver and trustee until April 20th, when it was sold by order of court to the plaintiff corporation.

All of the policies here in question had been obtained by Lord through the defendant Woodford, who acted as broker in placing the insurance with other agents. The policies were never assigned to the plaintiff and no written consent to their transfer to the plaintiff was ever given by the underwriters and indorsed upon or attached to the respective policies as required by their terms. The first question arising upon each appeal is whether, on the facts found by the State Referee, the Superior Court erred in holding that the policy in question was not in force at the date of the fire. And if the policy is not in force, a second question arises in each case (except No. 1012), whether the court erred in holding that the defendant Woodford was not liable in these actions for his admitted breach of an agreement to keep them in force.

The facts which are common to all these appeals may be summarized as follows: Although the policies were never assigned to or delivered to the plaintiff, there was an understanding between the plaintiff and Lord that they were to remain on the property and that the plaintiff would pay its share of the current premiums. Pursuant to this understanding, and while the transaction of passing title to the plaintiff was in progress on April 20th, 1917, Lord called the defendant Woodford on the telephone and told him that the property had been transferred to the plaintiff corporation. At the same time, Dresser, president of the plaintiff corporation, asked Woodford over the telephone to arrange for the transfer of the policies to the plaintiff, and Woodford said he would attend to the matter. This was between five and six o'clock in the afternoon. Next morning Dresser met Woodford by appointment at his office and Woodford handed him the following writing:

"Apr. 21, 1917.
Messrs. C. H. Dresser & Son, Inc.,
    287 Sheldon Street, City.
                Attention Mr. C. H. Dresser.
Dear Sir:
            Re: Transfer Insurance Chas. E. Lord
    Temporary Receiver, Cairns Woodworking Co.

Agreeable to our understanding of even date and confirming telephone request and order of last evening of your Attorney, Mr. Broder, you will accept and hold this letter, please, as evidence of insurance written in the name of the Receiver for the Cairns Woodworking Co., to wit:—Fire, $75,000. Compensation, Automobile, Steam Boiler and all other lines that may have been underwritten, having been arranged and bound in your name, effective as of noon April 20th.

Policies in due course, or to be rewritten to suit your pleasure or such arrangement as you desire to make at a later date.
                        Yours very truly,
                            A. E. Woodford."

On the same day after the talk with Dresser, Woodford made, signed and placed on file in his office the following memorandum:

"Memorandum.

Binding and transfer to C. H. Dresser & Son, Inc. all insurance written in name and for C. E. Lord, Rec. Cairns Woodworking Co."

During the conversation of April 21st, Dresser told Woodford that he thought there was too much fire insurance on the plant, but that the plaintiff proposed to take an inventory and would discuss with Woodford later the amount to be permanently carried on the plant. Plaintiff commenced to take an inventory on

April 21st, and was still working on it, but had not completed it, when the plant was almost completely destroyed by fire about nine o'clock on the morning of April 26th.

It was the custom among local fire insurance agents in Hartford that in cases of transfer of the title of an insured risk, the agent who dealt directly with the insured should notify other agents, who had issued policies on the property, of the transfer by letter or telephone; it was also customary for the agent who dealt directly with the owner to make out "transfer slips" and send them to the other agents interested. These were signed within a few days as the convenience of the office permitted. Oral consent was regarded as binding in the meantime. A delay of a few days in giving notice of the transfer was not unusual as between local agents.

The policy sued on in No. 1005 was issued through Woodford as broker by Horace S. Howe as general agent for the Allemannia Fire Insurance Company; the policy sued on in No. 1014 was so issued by Wakefield, Morley & Company as general agent for the Royal Insurance Company; and the policies sued on in Nos. 1007, 1012 and 1016 were so issued by the George B. Fisher Company as general agent for the Concordia Fire Insurance Company, the North River Insurance Company, and the United States Fire Insurance Company, respectively.

All of the policies were written to cover the risk in question with the knowledge that the property was then in bankruptcy, and as such considered by the various companies as an undesirable risk, and with the knowledge and understanding that the property was to be transferred and that the receiver or trustee in whose name the policies were written was merely the nominal owner for a short time; "and it was agreed by and

between the said George B. Fisher Company, Wakefield, Morley & Company and Horace S. Howe and Alton E. Woodford, a defendant herein, that as a consideration for the issuance of said policies hereinbefore set forth, they should have continued the said policies of insurance on the risk in question either in full or in a proportionate amount to the amount which the new owner should finally determine and carry," in case Woodford then controlled the placing of the fire insurance.

The dealings between Woodford and each of the above-named agents are set forth in the finding as follows:

### Wakefield, Morley & Company.

"About March 9, 1917, Mr. Curtis Case, an employee of Mr. Woodford, requested Wakefield, Morley & Company to issue insurance for companies of which they were the agents on the property in question and was told by Mr. Walter L. Wakefield, a member of the firm of Wakefield, Morley & Company, that that firm would issue such insurance provided there was an understanding that when the plant of The Cairns Woodworking Company was transferred from the Trustee in Bankruptcy to another and more permanent owner, if Mr. Woodford then controlled the fire insurance on said plant, Wakefield, Morley & Company should have a share of the fire insurance in proportion to the share which they were then taking.

"After the issue of policies by Wakefield, Morley & Company and shortly after March 9, 1917, Mr. Wakefield told Mr. Woodford and Mr. Case that the policies issued by Wakefield, Morley & Company, were issued with the understanding that when The Cairns Woodworking Company plant was transferred by the Trustee in Bankruptcy to another and more permanent owner, if Mr. Woodford then controlled the fire insurance on

the plant, Wakefield, Morley & Company were to have their proportionate share of the fire insurance.

"On May 10, 1917, after all the insurance companies involved had received notice of the fire and after the special agents of the insurance companies had talked to the officers of the plaintiff corporation, Wakefield, Morley & Company rendered a bill to Mr. Woodford for the premiums for one year on the policies issued by The British America Assurance Company, The People's National Insurance Company and The Royal Insurance Company as aforesaid, and on June 15, 1917, this bill was paid by Mr. Woodford by his check payable to Wakefield, Morley & Company and this check was collected in due course by Wakefield, Morley & Company. . . .

"Previous to the happening of the fire resulting in the loss of the insured premises, the said Wakefield, Morley & Company, through Walter Wakefield, had actual notice of the transfer of the insured property to Charles H. Dresser & Son, Inc., and after said actual notice took no steps to cancel or attempt to cancel any policies of insurance then in force and insuring the premises in question. . . .

"After the happening of the fire resulting in the destruction of the insured premises, the defendant Woodford paid to Wakefield, Morley & Company, agents for The Royal Insurance Company (Limited) of Liverpool, England, and Horace S. Howe, agent for The Allemannia Fire Insurance Company of the City of Pittsburgh, Penna., and The Continental Insurance Company, the full amount of the annual premium called for under the policies hereinbefore referred to, which said payment was duly accepted for the various companies by the said Wakefield, Morley & Company and the said Horace S. Howe." (Par. 58)

From the foregoing facts the State Referee con-

cluded that "Wakefield, Morley & Company, as agents of The Royal Insurance Company, The British America Assurance Company, and The People's National Fire Insurance Company, had authorized the defendant Woodford to agree to a transfer of the insurance to a new owner of the property and those companies later ratified and acquiesced in the transfer of the insurance to the plaintiff."

' Horace S. Howe.

"When the policies of The Allemannia Fire Insurance Company and The Continental Insurance Company were issued by Mr. Horace S. Howe shortly after March 9, 1917, and delivered by Mr. Howe to Mr. Woodford, Mr. Howe told Mr. Woodford that his policies were issued with the understanding that if Mr. Woodford controlled the fire insurance for the person to whom the trustee should later sell the property, Mr. Howe was to have the same policies or policies in proportion to the amount which he had issued.

"At all times from March 1, 1917, to July, 1918, there was a running account between the Woodford and Howe insurance offices, the Howe office always owing the Woodford office a balance; there was no cash settlement of this account until July, 1918.

"At various dates after May 1, 1917, Mr. Howe rendered bills to Mr. Woodford including as charges against Mr. Woodford the premiums for one year on the policies of the Continental and Allemannia Insurance Companies above described; the same statement showed amounts due from Mr. Howe to Mr. Woodford; the statement made by Mr. Howe dated February 15, 1918, showed a balance due to Mr. Woodford of $27.01, which Mr. Howe then paid by his check.'

From the foregoing facts and those stated in para-

graph 58 above quoted, the Referee concluded that "Horace S. Howe, as agent of the Allemannia Fire Insurance Company and the Continental Insurance Company had authorized the defendant Woodford to agree to a transfer of the insurance to a new owner of the property and those companies later ratified and acquiesced in the transfer of the insurance to the plaintiff."

### The George B. Fisher Company.

'On April 16, 1917, the Hartford Times published an item stating that the bid of C. H. Dresser & Son for the plant of the Cairns Woodworking Company had been accepted by the referee in bankruptcy and that deeds to the property would be signed by Mr. Lord, the Trustee.

"On April 17, 1917, the Hartford Courant printed an item stating that the plant of the Cairns Woodworking Company had been sold to Charles H. Dresser & Son by Mr. Lord, as Trustee, on the previous day.

"After the appearance of the newspaper items summarized in the foregoing paragraphs and prior to April 20th, 1917, Mr. Woodford and Mr. G. Burgess Fisher had a conversation in which these newspaper items were mentioned and Mr. Fisher expressed a desire to get the future fire insurance on the Cairns property. . . .

"Previous to the happening of the fire resulting in the loss of the insured premises, the said George B. Fisher Company through George B. Fisher, had actual notice of the transfer of the insured property to Charles H. Dresser & Son, Inc., and after said actual notice took no steps to cancel or attempt to cancel any policies of insurance then in force and insuring the premises in question.

"On April 24, 1917, Mr. Clark of the Woodford office telephoned Mr. Fisher about the transfer, and Mr.

Fisher wrote Mr. Woodford that day in regard to the risk, and Mr. Woodford replied, stating that Dresser had bought the plant; and Mr. Fisher received and read the letter, Exhibit I, on the evening of April 25. Mr. Fisher took no step of any kind in the matter until after the fire."

The letter, Exhibit I, referred to in the last quoted paragraph, is as follows:

"Apr. 25, 1917.

The G. B. Fisher Co.,
    Hartford, Ct.
            Attention Mr. G. B. Fisher.

Dear Sir: Replying to yours of Apr. 24th with reference to Cairns Woodworking Co. the present policies are to be cancelled or transferred to C. H. Dresser & Sons, who have purchased the plant, and have not advised us just yet as to how they wish insurance written. We will advise you fully within a few days.            Yours very truly."

From these facts the referee concluded that "The G. B. Fisher Company, as agent of The Scottish Union & National Insurance Company, The Niagara Fire Insurance Company, The New Brunswick Fire Insurance Company, The Concordia Insurance Company, The Firemen's Insurance Company and The Williamsburg City Fire Insurance Company, had orally consented to the transfer of the insurance issued by said companies to the plaintiff and had acquiesced in that transfer."

As to the North River Insurance Company the Referee finds that " the policy of the North River Fire Insurance Company was issued on condition that the policy of The Williamsburg City Fire Insurance Company should be surrendered and the surrender had not been effected at the time of the fire"; and concludes

therefrom: "I find no liability on the part of the North River Insurance Company."

The State Referee also concludes that the corporate defendants, with the exception of the North River Insurance Company, were estopped by the conduct of their respective agents from denying that they had consented to the transfer of the insurance to the plaintiff. Remonstrances to the acceptance of the Referee's report were filed and overruled, and the report was accepted; but the Superior Court was of opinion that the subordinate facts found did not support the conclusions drawn by the State Referee, and entered judgment for the corporate defendants in twelve of the fourteen cases. In two cases against insurance companies of which Woodford was himself a general agent the court entered judgment for the plaintiff, and in those cases no appeal has been taken.

*Josiah H. Peck*, with whom was *Frederick H. Waterhouse*, for the appellant (plaintiff).

*Lucius F. Robinson*, with whom was *Walter L. Came* of Boston, and *Barclay Robinson*, for the appellees (defendant Insurance Companies).

*William E. Egan*, with whom was *Frank E. Healy*, for the appellee (defendant Woodford).

BEACH, J. In No. 1012, the State Referee has found that the policy sued on in that action was written by the George B. Fisher Company, agent for the defendant the North River Insurance Company, and also agent for the Williamsburg City Fire Insurance Company, and its successor, the United States Fire Insurance Company, which is the defendant in No. 1016. The policy sued on in No. 1016 was issued by the Williams-

burg Company and afterward assumed by the United States Company; and the referee finds that the policy sued on in No. 1012 was issued on condition that the policy sued on in No. 1016 should be surrendered, and that the latter policy was never surrendered. Plaintiff has filed no remonstrance against the acceptance of this finding, and the conclusion of the referee, that the policy sued on in No. 1012 never came in force, is clearly right, for it was never intended or agreed that both of the policies above named should be in force at the same time.

As to the policies sued on in Nos. 1005, 1007, 1014 and 1016, the first question which presents itself is whether they, or any of them, were automatically terminated on April 20th, 1917, when the subject of insurance was transferred from Lord, trustee, to the plaintiff. Each of these policies contains the following provisions:—

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void . . . if any change, other than by the death of an insured, take place in the interest, title or possession of the subject of insurance."

"No officer, agent or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent or representative, shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

It is admitted that no writing waiving the above condition, or permitting the continuance of the in-

surance after the transfer of the subject of insurance from Lord, trustee, to the plaintiff, was indorsed on or annexed to the policies; but the plaintiff's claim is that the oral agreement between Woodford and the defendants' agents as set forth in the finding, was enough to bind all the insurance during the interval between the transfer and the loss, pending the plaintiff's determination of the amount of insurance it would finally carry. In Nos. 1005 and 1014, the plaintiff further claims that the action of the defendants' agents in demanding and receiving the full annual premiums on the policies sued on, after knowledge of the transfer and of the loss, was in recognition of the continued existence of the policies after the transfer. In Nos. 1007 and 1016 an additional claim is made based on the custom found, and on Mr. Fisher's request for the continuance of the insurance after knowledge of the transfer to the plaintiff, and before the loss.

The authority of the agents of the several defendants to consent orally to the temporary continuance of a policy after transfer of the subject of insurance, in accordance with the custom found, is not disputed, but the defendants' position is that the authority of the agents to so consent was limited by the custom which was not followed; it being admitted—at least, as to Howe and Wakefield, Morley & Company—that no request for an oral consent to a continuance of their policies was made by Woodford between the dates of the transfer and of the loss.

It is apparent, however, that the custom found is that which relates to the ordinary case of a transfer of the subject of insurance in respect of which no antecedent agreement for the continuance of the policy has been made; in which case the first necessary step toward obtaining a continuance is to ask for it. That is not quite this case.

The transaction here in question was one in which Woodford, acting as broker, was attempting to place a very considerable amount of insurance—evidently based on the bankrupt's schedules of assets—on a wood-working plant in the hands of a trustee in bankruptcy. The property itself does not appear to have been regarded as an objectionable risk, but, because an insured trustee in bankruptcy has not the same incentive to care in fire protection as an absolute owner, the plant was affected with an undesirable moral hazard, which was thought to be temporary and was expected to be eliminated within a short time by a sale of the plant to an absolute owner. Under these circumstances, the agents, seeking to obtain for their principals the continuance of the insurance, in whole or in part, after the objectionable moral hazard had been eliminated, contracted with Woodford, as a consideration for the issuance of the policies to the trustee in bankruptcy, that in case he still controlled the insurance when the expected transfer to an absolute ownership took place, their policies should be continued on the property "either in full or in a proportionate amount to the amount which the new owner should finally determine and carry." The expected transfer was concluded on the afternoon of April 20th, and the insurance was still controlled by Woodford, who had contracted with the plaintiff to continue all the policies in force until the plaintiff should finally determine, after inventory, the amount of insurance it would carry. The inventory was commenced on April 21st, and was in progress when the plant was practically destroyed by fire about nine o'clock on the morning of April 26th. According to the almanac for that year, four business days intervened between the transfer and the loss.

We take up first the question of the authority of the

agents to make the contract, and while the custom found throws some light on that subject, we are of opinion that the authority of the agents to make this particular oral contract must be determined primarily by reference to the accepted principles of the law of agency, aided by the decided cases, among which we have been referred to many that are helpful, but none directly in point. Without attempting to reconcile the numerous and conflicting decisions on the point, we have selected a few authorities as to the powers of a general fire insurance agent, which appear to us to be sound in principle and consistent with our statutes providing for a standard form of fire insurance policy, and for State supervision of the financial responsibility of fire insurance companies doing business in Connecticut.

The general principle that "the powers of the agent are, prima facie, coextensive with the business intrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals," is applicable to insurance agents. *Union Mut. Ins. Co.* v. *Wilkinson,* 80 U. S. (13 Wall.) 222, 235; 1 Cooley's Briefs on Insurance, p. 345 (quoting the above excerpt and citing other cases). Huffcut, stating the principle more concretely, says of the authority of an insurance agent: " If authorized to solicit and accept risks, or issue and renew policies, he is a general agent, and has ostensibly all the powers incidental to such an agency or customary in it." Huffcut on Agency (2d Ed.) p. 143. "An insurance agent clothed with authority to make contracts of insurance or to issue policies stands in the stead of the company to the assured." *Rivara* v. *Queen's Ins. Co.,* 62 Miss. 720, 728.

"Practically the agent is the principal in the making of the contract. It seems to us therefore that the rule may be properly thus laid down: that an agent author-

ized to issue policies of insurance, and consummate the contract, binds his principal by any act, agreement, representation or waiver, within the ordinary scope . . . of insurance business, which is not known by the assured to be beyond the authority granted to the agent." *American Central Ins. Co.* v. *McLanathan,* 11 Kan. 533, 549.

"In his relations with the plaintiff, who had no notice of any limitation upon his apparent authority other than those contained in the policies, Eastman, as the ostensible general agent of the defendant and its representative delegated to adjust the plaintiff's loss, stood in its place as to all the matters involved in the adjustment, and had full power to waive any of the conditions of the policies relating thereto, save as the provisions of the policies may have imposed some restraint upon him." *Bernhard* v. *Rochester German Ins. Co.,* 79 Conn. 388, 391, 65 Atl. 134. It should be noted that the *Bernhard* case turned on the authority of the agent, after the policy had been issued, to vary its terms by a subsequent parol waiver of the requirement that proofs of loss should be filed within a specified time, and it was held that the waiver being acted on was effective on the ground of equitable estoppel.

In the case at bar the parol agreement in question was made as a consideration of the issuance of the policies and related to their continuance after an expected transfer of the subject-matter to a new owner. It was in the nature of an oral contract of insurance, and we turn now to the question of the authority of general fire insurance agents to make oral binding contracts of insurance. Some of the books lay down the broad proposition, supported for the most part by the older cases, that a general agent of a fire insurance company may make by parol any contract of insurance which he might make by a written contract; but we

are inclined to agree with the Massachusetts court in holding that considerations of public policy underlying modern governmental supervision of the insurance business require that the contract liabilities of insurance companies should not be left subject to the uncertainties of parol testimony for an indefinite time. The safer rule appears to be that laid down in *McQuaid* v. *Ætna Ins. Co.*, 226 Mass. 281, 285, 115 N. E. 428, that a general agent of a fire insurance company "ordinarily . . . has authority only 'to make valid oral contracts of insurance for some temporary purpose incidental to the issuing of policies [of insurance] for long periods of time,'" citing *Baker* v. *Commercial Union Assur. Co.*, 162 Mass. 358, 38 N. E. 1124; *Scammell* v. *China Mutual Ins. Co.*, 164 Mass. 341, 41 N. E. 649. So in a New York case, where the validity of a parol agreement for successive renewals of a policy of fire insurance unlimited in point of time was in question, it has recently been held, affirming *Squier* v. *Hanover Fire Ins. Co.*, 162 N. Y. 552, 57 N. E. 93, and distinguishing *Trustees of the First Baptist Church* v. *Brooklyn Fire Ins. Co.*, 19 N. Y. 305, that while general insurance agents have authority to bind their principals temporarily by oral contracts to renew, they have no authority to bind them by oral agreements running indefinitely into the future. *Struzewski* v. *Farmers Fire Ins. Co.*, 226 N. Y. 338, 123 N. E. 661.

The authority of general fire insurance agents to agree orally to such alterations in the conditions of the policy as are permitted by the terms of the policy itself to be made by written agreement indorsed on or affixed thereto, is upheld by the weight of authority. See 2 Joyce on Ins. (2d Ed.) § 439; 3 Cooley's Briefs on Insurance, pp. 2476–2478; 26 Corpus Juris, p. 287, § 360. Limiting our decision to oral agreements intended to bridge over reasonably short intervals of

time pending the issuance or alteration, according to its terms, of a written policy, such oral agreements are not inconsistent with effective State supervision of the business of fire insurance.

When the contract under discussion is examined in the light of the foregoing principles, it appears to be within the ostensible authority of the defendants' agents and by no means unreasonable or improvident under the surrounding circumstances. Without re-stating them in detail, the findings show that these agents were intrusted with the solicitation and issuance of policies; that the contract in question was incidental to the issuance of policies on a plant not objectionable in itself, but temporarily subject to an undesirable moral hazard which was expected to be eliminated in the near future by its transfer to an absolute ownership. The really desirable business in sight was the con-tinuance of the insurance when and after the moral hazard had been thus eliminated. With a view to getting that business, the agents entered into a present oral contract with Woodford—necessarily conditioned on his continued control of the insurance—that their policies should be continued in force on the plant either in whole or in proportion to the insurance which the new owner should "finally determine and carry." We think this contract very plainly carried with it the customary oral consent to the continuance of all the policies after the expected transfer; such consent being effective only for a reasonably short time in which the new owner had opportunity to finally determine what insurance it would permanently carry. That the parties so understood it, appears not only from the fact that Woodford relied on it to protect him in binding all the policies while the plaintiff was taking inventory; but also from the fact that Wakefield, Morley & Company and Howe demanded and received from

Woodford the full annual premiums on their policies, after full knowledge of the transfer, and of the loss (which occurred within two months after the policies were issued), and of the plaintiff's claim that the policies were in force at the date of the loss. Fisher learned of the sale to the plaintiff, and before the actual transfer took place, asked Woodford for the future insurance. In view of the antecedent contract, we think this request involved a fresh assent to the continuance of his policies. Under the circumstances, the interval of four business days between the transfer of the plant and the loss was not an unreasonably long period of time to be covered by an oral agreement for continuance. The parties contracted with reference to a probable reduction of the insurance carried by the trustee in bankruptcy, and agreed that all the policies should be continued unless the new owner should finally determine to carry less insurance. In the meantime, the plaintiff elected to have all the policies continued and was diligently taking inventory for the purpose of finally determining what insurance it would permanently carry, when the loss occurred.

The specific objection is made that the agents attempted to delegate a discretionary power. We regard this objection as untenable, for the agents made the contract themselves, and exercised their own discretion in making it. No attempt was made to authorize Woodford to contract for the defendants, and his contract with the plaintiff binds himself only. Moreover, we are of opinion that the defendants are affected with imputed knowledge of contracts made within the ostensible authority of their agents. "Eastman was sent out to the world and to the plaintiff as endowed with those comprehensive powers which attach to a general agent, and to him was delegated the duty of representing the defendant in the adjustment

of the plaintiff's loss. His knowledge, in the absence of any provision in the contract to the contrary, became the knowledge of his principal." *Bernhard* v. *Rochester German Ins. Co.*, 79 Conn. 388, 393, 65 Atl. 134; citing *McGurk* v. *Metropolitan Life Ins. Co.*, 56 Conn. 528, 539, 16 Atl. 263; *Ward* v. *Metropolitan Life Ins. Co.*, 66 Conn. 227, 241, 33 Atl. 902; *The Distilled Spirits*, 78 U. S. (11 Wall.) 356. The knowledge of a general agent of a fire insurance company authorized to write insurance and consent to transfers, acquired in the course of the transactions he is authorized to conduct, is the knowledge of the insurer. 14 R. C. L. p. 1158, § 339, and cases cited.

The contract was made by and with Woodford in his representative capacity as an insurance broker. For all purposes of protection against loss by fire, the sole beneficiary of the contract was the prospective purchaser of the plant; a person not then identified, but capable of positive identification in case the contingencies happened upon which the contract was conditioned. *Certum est quod certum reddi potest.* When the plaintiff bought the plant and took Woodford's agreement to continue all outstanding insurance written for Mr. Lord, until the plaintiff should finally determine the amount it would carry, the contract at once identified the plaintiff as the sole beneficiary of the insurance. We see no reason why the plaintiff might not sue on the contract in its own name, joining both contracting parties; and this it has done in the four cases now under discussion, by its reply to the second defense to both counts. *Baurer* v. *Devenis,* 99 Conn. 203, 121 Atl. 566.

The trial court, after holding that none of the policies, except those issued by companies for which Woodford himself was a general agent, was continued in force, also held that the plaintiff could not recover against

Woodford for the breach, thus adjudicated, of his under-taking temporarily to bind all outstanding insurance, solely on the ground that the plaintiff's admitted cause of action was single in its nature and had been split by making Woodford a codefendant in each of the actions against the separate corporate defendants.  Our conclusion makes it unnecessary to review this ruling of the trial court in the four cases under discussion; but since the stated purpose of all parties is to obtain a decision which will control other cases not before us, it may be desirable that we should do so.  We are of opinion that Woodford's undertaking, though stated in general terms, was in its nature severable.  It could only be fully performed by temporarily continuing in force each and every outstanding policy, or its equivalent, and that understanding is expressed in Woodford's letter of April 20th by the phrase, "Policies in due course, or to be re-written to suit your pleasure."  Performance as to any policy might depend on what Woodford did or omitted in that instance, and a defense might be made by one agency, or one insurer, not made by, or not open to, another.  If the plaintiff had sued Woodford in one separate action, it could not have attempted to prove its damages until after all the actions against the corporate defendants had passed to judgment; and it would still be a question whether a failure to recover against any particular insurer was due to Woodford's default.  On the other hand, the plaintiff, suing as the beneficiary of the contract between Woodford and the agents of the respective defendants, was entitled to make Woodford a party in each action.  *Baurer* v. *Devenis*, 99 Conn. 203, 216, 121 Atl. 566.  See also *Bridgeport* v. *Scott Co.*, 94 Conn. 461, 466, 109 Atl. 162.

In No. 1012 there is no error.

In Nos. 1005, 1007, 1014 and 1016, there is error, the judgments are set aside and the causes remanded

with direction to enter judgment in each case for the plaintiff against the defendant insurance company in accordance with this opinion; and in each case judgment for the defendant Woodford.

In this opinion the other judges concurred.