CLARA BULL BALDWIN *v.* SAINT PAUL FIRE AND MARINE INSURANCE COMPANY.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued May 5—decided June 10, 1942.

*David S. Day,* with whom was *Daniel F. Wheeler,* for the appellant (plaintiff).

*John Buckley,* for the appellee (defendant).

MALTBIE, C. J. In this action the plaintiff claimed reformation of a policy of insurance against loss by fire and related risks which had been issued to her by the defendant to cover a dwelling house she was constructing, and specific performance of an oral agreement which she claimed to have made with an agent of the defendant before the issuance of the policy.

The plaintiff applied through her insurance broker to the agent of the defendant for a policy to protect

her against loss during the process of construction of the building. A "builder's risk" form of policy was issued to her which would have protected her against loss for the period of one year or until the completion of the building to the full amount of the contract price, $36,000. The plaintiff considered that the premium charges for this policy were too high, and, as her broker was unable to secure a reduced rate, the policy was canceled. As a result of further negotiations another form of policy for which a smaller insurance premium was charged was issued to the plaintiff on November 28, 1939, and was accepted by her. This was a so-called "straight dwelling house form," but included the right to complete the building. The amount of the insurance was $10,000, which represented the capital investment in the building at the time the policy was issued. It contained no provision for increasing the amount of the insurance, but it was understood between the broker and the defendant's agent that the amount might be increased as the building progressed. On or about February 1, 1940, the broker ascertained that the construction had progressed to such an extent that $5000 additional insurance should be placed on the building, and secured an indorsement of the policy to this effect, at an additional premium at the same rate as that charged for the original policy. On March 2, 1940, the plaintiff's broker wrote the contractor for the building asking a statement of the value at that time and he replied giving the value as then amounting to $25,000. Between the time this reply was mailed and its receipt by the broker, the building was entirely destroyed by fire. The plaintiff filed a proof of loss in the amount of $22,515.15. The defendant, at the trial, offered judgment to the extent of $15,000, the amount of the insurance stated in the policy and indorsement, but

refused to pay the balance of the loss. The trial court rendered judgment for the plaintiff to recover the amount offered by the defendant, with interest, and the plaintiff appealed.

The claim of the plaintiff is that there was an oral agreement between her broker and the defendant's agent that a policy should be issued which would at all times cover the entire value of the house as that value was increased in the process of construction. The trial court has found, however, that, while it was the purpose of both to arrange insurance in such a way that the property would be at all times adequately insured, the agreement was that the plaintiff's broker would order such increases in the amount of the policy as might be required from time to time to accomplish that purpose. This finding is amply supported by the testimony as well as by reasonable inferences which the trial court might draw. The plaintiff had the choice of taking out a policy to the full amount of the contract price for constructing the house, which would have covered her entire loss should it be destroyed or damaged at any time during the course of its construction, or a policy which covered it only to the amount of the capital invested at the time the policy was issued, with the option, at her request, to have that amount increased from time to time to cover further investment of capital. She chose the latter. At the time the building was destroyed she had requested and received an indorsement increasing the amount $5000 above the original amount of the policy, $10,000. That fixed the limit of her right of recovery against the defendant. There was no oral agreement between the defendant's agent and the plaintiff's broker which would have justified the court in reforming the policy as sought by the plaintiff on the ground of mutual mistake; *Cherkoss* v. *Gasser,* 123 Conn. 368, 370, 195

Atl. 737; *Hoffman* v. *Fidelity & Casualty Co.*, 125 Conn. 440, 443, 6 Atl. (2d) 357; nor was there any oral agreement which could be the basis upon which the court could decree specific performance, even if an oral agreement of the nature of that claimed made with the defendant's agent would be enforceable. See *Dresser & Son, Inc.* v. *Insurance Companies*, 101 Conn. 626, 642, 126 Atl. 912.

The defendant's agent in the transaction was G. P. Bartenfeld, Inc., a company of which Mr. Bartenfeld was executive head. He was not called as a witness, nor was his absence explained. The plaintiff claimed that there was a presumption that his testimony would have been adverse to the defendant. The trial court has found that the only connection he had with the transaction was, when the plaintiff's broker first called at his office, to turn the matter over to one of the company's employees, and that all further negotiations with reference to the policies were with the latter, except that Mr. Bartenfeld signed the indorsement at the request of the employee. There is no testimony that Mr. Bartenfeld had any connection with the matter such that he could have thrown any light upon the question whether there was such an oral agreement as the plaintiff claims, and the trial court was under no duty to draw any inferences from his failure to testify which would be relevant to the controlling issue in the case.

There is no error.

In this opinion the other judges concurred.