Hillsborough, }
May 15, 1930. }

THE SECOND NATIONAL BANK OF NASHUA

*v.*

THE OLD GUARANTY SAVINGS BANK OF NASHUA, & a.

*Demond, Woodworth, Sulloway & Rogers* (*Mr. Woodworth* orally), for the plaintiff.

*Ivory C. Eaton,* for the defendant bank.

*Ralph W. Davis,* attorney-general, and *Winthrop Wadleigh,* assistant attorney-general (*Mr. Wadleigh* orally), for the bank commissioner.

ALLEN, J.   One question transferred is if a guaranty savings bank may surrender its charter, assuming its right to go out of business and liquidate its affairs.   The question is wholly irrelevant to the merits of the petition, which seeks only to have the contract between the banks declared valid.   If the defendant bank may cease to do business in the manner proposed, its continued existence or the requirements for terminating its existence are matters not raised by the litigation.   The vote to surrender its charter may or may not be enough to effect a dissolution without further action through court decree or legislative acceptance of the surrender.   But the right to cease business is not dependent upon the right to cease existence. This question is accordingly not answered.

Relative to a savings bank's right to go voluntarily out of business, the right of an ordinary business corporation to liquidate at its own instance, even upon only a majority vote of the stockholders, has been declared in the well considered case of *Bowditch* v. *Company*, 76 N. H. 351. But the commissioner suggests that savings banks are affected with a public interest and that their business may not be liquidated unless it is for the public good. And he then suggests that only the legislature may determine if it is for the public good until it has delegated to some authority the right to decide the question upon such tests and in such manner as it may prescribe.

It is difficult to see wherein there is a public interest which places a savings bank under public obligation to continue in business so long as it may be solvent and properly managed, once it has commenced business. No authority is cited for the proposition and no argument is advanced for it beyond its assertion. What is meant in saying that a savings bank is affected with a public interest is vague and indefinite. There is a public interest to have savings banks successful, but that interest is no indication of public right to have them continue to do business while they remain successful. There is a public interest of the same nature in respect to all corporations. Whether generally or specially chartered, corporations are deemed to be in the public interest, from the authority given to incorporate and from the assistance in business, industrial and social relations thought to be derived from corporate form, organization and management.

In its promotion of economy and thrift, in its purpose of enabling persons of small means to have their savings well and profitably cared for, and for other reasons, a savings bank may be, and usually is, of more public importance than an ordinary business enterprise. But the difference is only of degree, and not of character, from the standpoint of the unwritten law. A savings bank is essentially a private undertaking. It is privately managed and privately owned, and it has no duty of public service.

Even when a corporation has some duty of public service, its right to liquidate has never been questioned when legislative restriction or its own undertaking does not bar it. Corporations engaged in the hotel, public conveyance, water service, gas service, and electric service business may be cited as examples.

Nor does the grant of a perpetual charter bear on the question. Authority to act is not compulsion to act. Most charters today, both special and general, are unlimited in respect to the duration

of corporate life, and the right to act thereunder is not to be construed as an obligation to act in the absence of other evidence than the mere grant of the charter.

While the legislature may require action as a condition of the right to act, its grant of the right does not imply the requirement. And while it may declare a public policy within constitutional limits but not known to the common law, the policy does not exist until the declaration.

The character of the business of a savings bank calls for extensive public regulation, and the legislature has taken a large control and supervision over the conduct of the business. But regulation is no test of a public nature of the business, and neither the power to regulate nor the exercise of the power implies compulsion to do business. The exercise of regulatory control shows an interest of the public that conduct shall be proper but not that it shall be required. The state's mandate only is that if business is done, it shall be done in such manner and ways as it prescribes. A savings bank is not an agency of government in any sense and performs no public functions. Except as controled and supervised, it has the common-law freedom of action given an ordinary business corporation.

It is suggested that because there are statutes authorizing or requiring the liquidation of a mismanaged or insolvent savings bank, liquidation of a bank not thus in trouble is impliedly prohibited. No such legislative intent may be therefrom inferred. The legislation has only a protective purpose of avoiding loss and inequality. The need of interference in such a situation shows no need of consent to liquidate when there is a different situation. That danger calls for the state to take charge and settle a bank's affairs does not go to show that the bank may not itself settle its affairs when there is no danger. The legislation is but an exercise of the state's regulatory authority, designed to meet special situations, and carries no prohibition of voluntary action when such situations are not presented. It is not a case of saying under what conditions something is permitted, but is one of saying under what conditions something shall be done. The commissioner's grant of authority to enforce liquidation is for protection in the event of mismanagement or insolvency. It was not designed as a declaration of the only grounds for liquidation, but was meant to declare the only grounds therefor on which the commissioner might take action.

Conceivably the members of the corporation forming the bank may honestly and reasonably believe liquidation advisable, although there

is no ground for the commissioner to take action to that end or although it may not so appear to him. He may act only when the law is violated, the bank's condition is unsafe, or the public safety requires cessation of business. Plainly other considerations may rightly call for liquidation. Competition of serious force, dwindling deposits, inadequate quarters and facilities, and limited income may be suggested among reasons for going out of business when there is no real condition or menace of unsafety. Future prospects as well as present state are proper considerations to go into the reckoning. Conditions and circumstances giving practical reason for a solvent and well managed bank to be liquidated and no opposing public interest appearing, the argument that the legislature has reserved to itself the right exclusively to pass judgment in the premises must fail.

The foregoing considerations apply to all savings banks. There is additional reason for holding that one of the guaranty type has the right of voluntary liquidation. In the case of the ordinary savings bank the members of the corporation have no property interests in its assets. In the case of a guaranty savings bank the guarantors are in every substantial way stockholders and the legislation on the subject so treats them. By P. L., c. 260, s. 23, it is enacted that no such bank shall do business until its capital stock has been paid in. And this act was in force when the defendant bank was transformed into one of the guaranty form. In such change the guarantors furnished the guaranty fund, became entitled to all the profits, became the members of the corporation, as such were entitled to one vote for each hundred dollars paid towards the fund, and in the event of liquidation were entitled to all the assets after payment of debts and the amount of the general deposits.

The guarantors thus launching an enterprise for the sake of a profitable investment of their money, it is not to be held that they might not give up the enterprise when they thought it in the interest of their investment to do so. No specific prohibition against it is expressed and no implication of prohibition is found. That money thus invested must permanently remain so, or, which comes to the same thing, until permission to liquidate is given, is contrary to established business practices and principles, and legislative purpose to impose such a restriction does not appear. The amendment to the charter setting up the guaranty feature of the bank in terms stated no such condition. Nor was it granted in the light of any public policy shown to have been declared by the legislature or existing at common law as imposing it.

By the contract the plaintiff assumes all of the defendant bank's liabilities. Except as restricted thereby, the plaintiff will acquire general and full title to all of the defendant bank's assets. But such assets are impressed with a trust for the payment of the defendant bank's debts and the claims of its general depositors. The creditors and general depositors are therefore entitled to have them held separately as security for what is due them, and with the assets are to be included the securities to be taken directly by the guarantors from the defendant bank. And during the process of liquidation and until the general deposits and debts are paid, or the security therefor released, the general depositors and creditors are entitled to have the assets maintained in the form of investments which savings banks are authorized to make. The plaintiff's promise and liability to pay is not such an investment. Its assumption of the defendant bank's liabilities is construed to include the liability to keep the assets as security for the general deposits and debts and in a form the law permits. Any other construction would impair the rights of the general depositors and creditors. With the further arrangement for the transfer to be conducted in such a manner as to meet the commissioner's approval, any objection to the contract on the ground of its disturbance of the rights of creditors and the general depositors does not appear maintainable.

*Case discharged.*

All concurred.